## HARTFORD FIRE INSURANCE COMPANY v. J. M. DORROH.

Decided December .15, 1910; January 12, 1911.

**1.—Insurance—Increased Risk—Failure to Report.**

On the issue of forfeiture of policy by the risk being increased, the fact that insured, during its term, received an anonymous letter intimating that some owner of neighboring premises was about to set fire to them was no proof of the fact that such danger actually existed.

**2.—Same.**

The increase of the risk which will avoid an insurance policy, under a provision to that effect, refers to changes in conditions in or upon the insured premises. Increased likelihood of incendiary fire of neighboring premises not under control of insured, by acts of others, would not come under such provision.

**3.—Same—Right to Cancel Policy.**

The increased risk which would avoid a policy must be a new one, not existing at the time the policy was executed and delivered. Otherwise the in-

sured would have no right to cancel the policy on learning of such risk, though *previously unknown; and insured would be under no obligation, on learning of* such risk, as when he is warned of the likelihood of incendiary fires on the premises of neighboring proprietors, to inform the insurer thereof.

### 4.—Same—Risk Insured.

The hazard insured is the possibility of loss by fire, created by the sum of all dangers resulting from the recognized exposures, risks being graded and rates adjusted according to the physical conditions and surroundings of the property. A loss from incendiary fire for which insured was not responsible is one of the dangers which the insurer assumes.

### 5.—Case Stated.

A contract of insurance provided: "This entire policy shall be null and void if the hazard be increased by any means within the control or knowledge of insured." While it was in force insured received an anonymous letter, saying: "Some merchant below you all is moving goods at night. Now keep this a secret and look out." He did not communicate this fact to insurer. Shortly after his insured building was destroyed by fire. Held that the policy was not rendered void by his failure to communicate to insurer the warning so received.

### 6.—Evidence—Materiality.

The receipt of an anonymous letter of warning by insured and his failure to communicate the fact to insurer constituting no defense to his action for loss on the policy, his reasons given for disregarding the warning and failing to inform the insurer were not prejudicial nor ground for reversal, though embracing matters inadmissible in evidence, such as contents of other threatening letters to himself and others and statements that such threats had proved idle. Defendant by introducing the anonymous letter was responsible for bringing the immaterial issue into the case.

### 7.—Evidence—Error not Prejudicial.

The admission of evidence which could not have affected the appellant prejudicially is not ground for reversal though it was inadmissible.

### 8.—Evidence—Part of Statement.

The introduction by defendant of a part of a letter or written statement of plaintiff makes proper the introduction, on behalf of the latter, of so much of the remainder as is essential to a proper explanation of the part offered by his adversary.

### 9.—Insurance—Total Loss.

Evidence held to show that an insured building was a total loss, there being no proof of value of such part of the foundation or vault as were made use of in rebuilding.

ON MOTION FOR REHEARING.

### 10.—Insurance—Increased Risk—Additional Insurance.

The insured being under no obligation to communicate to the insurer the fact that he had been warned during the life of the policy against incendiary fires in neighboring buildings, the fact that after such warning he took out additional insurance will not render his failure to so communicate the facts to the first insurer fraudulent or wrongful. Its effect on the additional insurance was immaterial to such issue.

### 11.—Insurance—Total Loss.

The fact that the vault in the burned building was in such condition that it was used in rebuilding did not prevent the loss of the building being a total one, where there was no proof that it was so constructed as to be a part of the building, and it was insured, instead, with furniture and fixtures.

Vol. LXIII Civil-36.

Error from the District Court of Upshur County. Tried below before Hon. R. W. Simpson.

*William Thompson, Geo. S. Wright,* and *I. D. Fowler,* for plaintiff in error.—Where there is an issue as to an increase of hazard by reason of a contemplated fire and knowledge of such increase on the part of the assured by reason of his receipt of an anonymous letter a few days before the fire, purporting to be from a friend, and to the effect that someone in the same block with the assured was moving goods from his store at night and advising that the assured look out, it is reversible error to allow the assured to testify as to anonymous letters received by others at Big Sandy some years before the fire, because such testimony is immaterial, irrelevant and too remote. Evanisch v. Gulf, etc., Ry. Co., 61 Texas, 28; Kellogg v. McCabe, 92 Texas, 201; King Mfg. Co. v. Solomon, 25 S. W., 450; 11 Am. & Eng. Ency. of Law, 501.

The admission of the evidence of the plaintiff as to anonymous letters received by others in Big Sandy, and of their contents and of their effect, was error because such evidence was hearsay. Gilbert v. Oldham, 69 Texas, 673; Davidson v. Wallington, 88 Texas, 622; Halff v. Goldfrank, 49 S. W., 1095.

The courts of this State have repeatedly held that the self-serving declarations of parties to a suit are inadmissible. Aetna Ins. Co. v. Eastman, 97 Texas, 34; Weaver v. Ashcroft, 56 Texas, 444; Mooring v. McBride, 62 Texas, 312; Moody v. Gardner, 42 Texas, 414; Downey v. Taylor, 48 S. W., 541.

Where such portion of a building remains after the fire as would be reasonably suitable for replacing the building in the condition in which it was before the fire, there is not a total loss. Royal Ins. Co. v. McIntyre, 90 Texas, 170.

*Warren & Briggs* and *J. P. Hart,* for defendant in error.

HODGES, ASSOCIATE JUSTICE.—On January 8, 1909, a building belonging to defendant in error and occupied by the company of which he was a member, as a general merchandise store, was destroyed by fire. The property was at that time covered by a policy of insurance issued by the plaintiff in error for $3500. Upon demand and refusal of payment this suit was instituted to recover the amount of the policy. Plaintiff in error denied liability upon the following grounds: 1. That the provisions of the policy forbidding the taking of other insurance without the consent of the company had been breached. 2. That after the policy was issued the hazard became increased by threatened danger by fire, and notice of this fact was brought home to the assured, who failed to notify the company and obtain its consent for the policy to remain in force as required by its terms. 3. That the assured was guilty of fraud in reference to the insurance, or the subject thereof, in that before the fire occurred he was advised and put upon notice of the contemplated fire, and that he failed to exercise ordinary care to pre-

vent the fire, and concealed from plaintiff in error information in reference to the contemplated fire. A trial before a jury resulted in a verdict and judgment in favor of the defendant in error for the full amount sued for.

None of the assignments presented in the brief of the plaintiff in error raise any questions involving the defense embodied in the first subdivision above mentioned. Among the numerous clauses providing for its forfeiture under the conditions named in the policy was the following: "This entire policy shall be null and void if the hazard be increased by any means within the control or knowledge of the insured." The particular fact relied upon as constituting the increased hazard in the present case was the receipt by Dorroh a few days prior to the fire of the following anonymous letter: "T. J. and J. Some merchant below you all is moving goods at night. Now keep this a secret and look out. This is from a friend of yours. Jim and the old man." The plaintiff in error was not informed of the existence of this communication till after the fire. On both his direct and cross-examination, while on the witness stand, Dorroh was interrogated touching the receipt of this letter and why he had failed to disclose that fact to the company, or its local agent. In giving his reasons he was permitted, over objection of plaintiff in error, to testify substantially as follows: "I have heard and known of other anonymous letters being received by people, which letters were of a threatening nature and received by people in Big Sandy. Dr. Gregory got one of these letters four or five years ago. I can not recall the contents of the letter received by Dr. Gregory at this time; it was a letter threatening him about prohibition." And in answer to the question as to whether the threats were ever put into execution, he testified, "I do not know of any harm coming to them in this world, except that he and Campbell wore out a pistol of mine carrying it for some people. I do not know who they were. Mr. Campbell, who was an editor and justice of the peace of Big Sandy, also received an anonymous letter, and this letter had something in it about the enforcement of the law down there." The witness was further permitted to testify concerning a letter which he said he had received a year and a half before that time, warning him to leave town or "stop meddling about the whisky business," and to say that nothing ever came of that letter. This testimony was objected to on the ground that it was irrelevant, immaterial, incompetent, and hearsay, and based upon writings which were not before the court and for whose non-production no explanation had been given. The admission of this and similar testimony is complained of in several different assignments, all of which will be considered together.

There are two grounds upon which the materiality of this testimony may be challenged. One is, if the letter made known to Dorroh an increased hazard within the meaning of the policy providing for a forfeiture in such cases, any explanation which he might give after the loss for his failure to disclose his information to the company would not affect the legal consequences of the fact that the hazard had been

increased and that he knew it. The other is, the letter shows upon its face that it does not relate to a hazard the increase of which "by any means within the control or knowledge of the insured" should by the terms of the policy cause a forfeiture. The paragraph containing this provision of the policy is as follows: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment and it be operated in whole or in part at night later than 10 o'clock, or if it cease to be operated for more than ten consecutive days; *or if the hazard be increased by any means within the control or knowledge of the insured* (italics ours); or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time." Then follow a number of other provisions, in which it is stipulated that there shall be a forfeiture of the policy if certain named conditions occur.

If this anonymous communication, and its receipt by Dorroh, is to be regarded as materially affecting the continued validity of the policy of insurance, it must be because it conveyed to Dorroh information of preparations for incendiarism on other premises. The writer does not say specifically that someone was preparing, or intending, to set fire to this or another building, but uses language which might be construed as an intimation that he thought a burning was probable. The real hazard, if any, did not arise from the writing and receipt of the letter, but upon the independent existence of the conditions referred to,—that someone was guilty of moving goods secretly at night with a view of subsequently burning the building being vacated. Unless this occurrence took place there was no new menace to the property brought to the knowledge of the insured, and no grounds upon which to claim a forfeiture. It seems that no effort was made upon the trial in the court below to prove that any such state of facts as that stated in this communication had ever existed. The duty of making that proof rested upon the plaintiff in error. 19 Cyc., 936-937, and cases cited. Certainly the mere writing and mailing of this anonymous communication will not be considered sufficient evidence. Until it is shown that a more hazardous situation had been created it can not be said that Dorroh had been informed of any, and there could be no cause for a forfeiture under that clause of the policy.

It is also apparent from the face of this letter that the probable incendiarism hinted at would likely originate on premises other than those covered by this policy. It has been held that the "increased hazard" provided against in policies of insurance refers to changes in conditions in or upon the insured premises, and not on those adjacent. State Ins. Co. v. Taylor, 14 Colo., 499, 24 Pac., 333, 20 Am. St., 281; Sun Ins. Co. v. T. F. & M. Works, 3 W. & W. Civ. Cases, Court of Appeals, sec. 320; 2 Cooley's Briefs on Ins., 1499, 1500. In the case first above cited the court said: "It is provided in the policy that if

the hazard is increased without the consent of the company in writing, the policy shall be void. This should be construed as only applying to the insured premises, or to property under the control of the insured. There is nothing in the language used which would extend it to property not under his control, and the acts of others, and hold him responsible for the acts of his neighbors, or contiguous owners, and require him to keep informed as to the manner in which other persons in the neighborhood use their property, or to communicate the facts to the insurer. The contract of insurance being mutual, good faith should require that he give information of any fact, or act of his own, or with his consent, on the property insured, or adjoining, and under his control, whereby the risk was increased. Further than that he could not be expected to go." In support of that doctrine the court quotes from May on Ins., secs. 244, 247, and Wood on Ins., sec. 237. The latter authorities, not being accessible to us, have not been examined. It is also the established rule that whether there has been an increase in the hazard or not must be determined by a comparison with the conditions existing at the time the policy was written. 2 Cooley's Briefs on Ins., 1637. Until it is shown that a new danger has arisen that did not exist at the time the policy was written and delivered which augmented the general risk, there is no basis for the claim of forfeiture by reason of an increased hazard.

There occurs to us still another reason why this communication should be disregarded as a defense in this case, and the error, if any, in admitting this testimony held to be harmless. The forfeiture of this policy is not insisted on because the hazard had been increased by some "means within the control" of Dorroh, but by some "means" of which he had knowledge, and because he had failed to communicate this information to the company. If there is any clause in this policy requiring the insured to impart such information to the insurer in order to avoid a forfeiture we have overlooked it. It may be said that in the event an increase of the hazard arises through some means within the knowledge, or control, of the insured, and the new situation is made known to the insurer, its failure to promptly cancel the policy and return the unearned portion of the premium should be considered as a waiver of the forfeiture and treated as a recognition of its continued liability. But before such questions can arise it must be shown that there has been an actual increase of the hazard assumed by the insurer for which he may, under the terms of the contract, claim a forfeiture. Let us admit, for the sake of argument, that the evidence in this case proved the truth of the facts stated in the anonymous communication to Dorroh, that someone was secretly in the nighttime removing goods from some building "below" that covered by this policy; and further, let it be assumed that such facts indicated that an incendiary fire was likely to follow which would endanger, if not destroy Dorroh's property; can it be said that this would establish the right to claim the forfeiture insisted on in this case? We are disposed to think it can not, for the reason that this would not establish the existence of an "increased

hazard" within the meaning of this policy. Webster defines the word "hazard" to mean "the incurring of the possibility of loss, or harm, for the possibility of a benefit." Here the insurer undertakes to indemnify the insured against the possibility of a loss by fire for an agreed consideration paid in advance. The hazard here referred to evidently means the possibility of a loss by fire created by the sum of all dangers resulting from the recognized exposures. It is a matter of common knowledge that accepted insurance risks are graded, and premium rates adjusted, according to the physical conditions and surroundings of the property insured. It is also well known that many fires are of incendiary origin, and that in the transaction of their business insurance companies must take into consideration the dangers arising from that source in estimating the extent of the hazard they assume in all ordinary risks. This is what they call the "moral hazard." We think it will hardly be denied that in the same community and among the same class of people, at least, this element may be regarded as a constant factor, entering alike into all insurance contracts and risks taken. Hence, it follows that a loss resulting from incendiarism, for which the insured can not be held responsible, is one of the dangers against which he secures protection by the general terms of the policy. It is one of the dangers which the company assumes when it makes the contract of insurance, and not one which it may claim arises subsequently and adds to the original hazard. The increased probability of a loss by incendiarism could no more be considered an "increased hazard" which would avoid the policy than could the increased probability of a fire from any of the physical exposures existing at the time the policy was written. To hold otherwise would be to place upon the policy a construction that would render the contract unreasonable. If the construction contended for by plaintiff in error be the proper one, this policy of insurance would be nullified at any time by a threat to commit arson upon the insured premises, or upon adjacent premises sufficiently close to endanger the former. Yet such a contingency formed one of the elements of danger insured against. It may be a proper precaution for insurance companies to protect themselves against an increased hazard caused by such an alteration in the physical conditions and surroundings of the property as to create new sources of danger, thus augmenting the burden assumed beyond that contemplated in their contract. Under such conditions they might well say they would have refused the risk, or would have demanded a greater premium as the price of carrying it. "If the terms of a policy are capable of two interpretations equally reasonable, it is the general rule that that construction which is most favorable to the insured must be adopted." 16 Am. & Eng. Ency. of Law, 863, and cases cited. We are therefore of the opinion that the clause of the policy providing for a forfeiture if the hazard be increased by any means within the control or knowledge of the insured, refers to hazards resulting from physical changes.

Applying the principles discussed to the facts of this case, we reach the conclusion that there is an absence of any grounds for the claim

that this policy was forfeited on account of an "increased hazard." The danger, if any, created, or disclosed, by showing that goods were being secretly removed, was only such as might result from an act of incendiarism for which the insured could not be held responsible. It follows from what has been said that all testimony relating to the anonymous letter received by Dorroh was immaterial and irrelevant to any issue upon which the plaintiff in error might rely for a defense. We are further of the opinion that the admission of the objectionable evidence was entirely harmless and furnishes no cause for a reversal of the judgment. The plaintiff in error introduced the letter in evidence, and must bear the responsibility for the injection of that issue into the trial of the case.

What has been said also disposes of the sixth assignment of error.

The seventh assignment complains of the action of the court in admitting in evidence a portion of the answers given by Dorroh in his examination under oath immediately after the fire. The question and answer were as follows:

"Q. When did you first learn that this policy of the Hartford Fire Insurance Company for $2000 had been taken out by him for you?

"A. That was the Prothro policy. Well, I recollect the occasion, but I can not tell. I recollect seeing the policy and him calling my attention to it, but I do not recollect the time. I happened to be there, and he called my attention to the fact that the policy had expired and he was going to renew it."

The plaintiff in error had offered other portions of the question and answers asked and given upon that occasion relating to a policy issued by an agent by the name of T. L. Prothro. Just what the Prothro policy, as it is termed, had to do with the validity of this we are not advised—presumably it was referred to as one of the policies whose issuance caused the excess of the insurance relied upon as avoiding this one. An examination of the evidence, however, shows that there was no effort to defeat this suit by showing the issuance of the Prothro policy. If we may judge from the volume of testimony offered, the defense of excessive concurrent insurance rested mainly upon a policy issued by Cooke & Raines, insurance agents residing at Longview, Texas. The question sought to elicit from the witness an answer as to the time when he learned of the issuance of this Prothro policy for $2000. The reply was so vague and indefinite as to amount to no answer at all. The witness merely says that he recollected the occasion, but could not tell when it was. We are unable to see how these statements could have affected the plaintiff in error prejudicially. However, if the testimony should be considered material from any standpoint, we think it was probably admissible under the rule that when a portion of a letter or conversation is admitted in evidence so much of the remainder as is essential to a proper explanation of that which has been offered is also admissible. The answer objected to was offered by the defendant in error after the plaintiff in error had introduced other portions of what Dorroh had stated upon the occasion referred to.

It is also claimed that there was evidence tending to show only a partial loss, and that the court erred in instructing the jury, if they found for the plaintiff in the suit, to find the full amount of the policy. The testimony shows that after the fire a portion of the lot upon which the building stood was sold to the banking company which had formerly occupied a part of it as a tenant. The bank rebuilt on the same lot. Perdue, a witness for the plaintiff in error, testified that in doing so they used some part of the foundation of the old building and a part of the old bank vault. The extent and value of the parts so used are not shown; neither is there any evidence of the kind and character of the structure called the "bank vault," and whether or not it was a part of the building. Defendant in error contends that it was not. Be that as it may, we think the evidence shows a total loss, and there was no error in giving the charge complained of. Amer. Cent. Ins. Co. v. Murphy, 61 S. W., 956; same case, 54 S. W., 407; (Murphy v. Amer. Cent. Ins. Co., 25 Texas Civ. App., 241).

The judgment of the District Court is affirmed.

### ON MOTION FOR REHEARING.

Since this case was first decided by us the opinion of the Supreme Court in the case of Williamsburg City Fire Ins. Co. v. Weeks Drug Co., 103 Texas, 608, 132 S. W., 121, has been published. We think what is there said sustains the views expressed by this court with reference to the plaintiff in error's contention that the hazard had been increased by the receipt of the anonymous letter written to Dorroh, and it is therefore unnecessary for us to add anything further upon that issue. It is now claimed that the concealment by Dorroh of the fact that such letter had been written was material upon the issue of the fraud charged in plaintiff in error's answer. The averments referred to are in substance that Dorroh, in addition to concealing from plaintiff in error the information imparted in the anonymous communication, thereafter took out another policy in the same company covering the property insured by this policy. If there was any fraud in procuring this additional contract of insurance, that defense may be urged when an effort is made to collect a loss under that contract. Such a fraud would have no effect on this policy unless in procuring the additional insurance defendant in error exceeded the amount of concurrent insurance permitted under this contract, but that he did contract in excess of the amount allowed is not now insisted on.

It is also urged that we erred in holding that the evidence showed a total loss, and the statement is made that Perdue, one of plaintiff in error's witnesses, testified that the bank vault was a part of the building destroyed. Upon a second examination of the statement of facts we find no such testimony. On the contrary, the evidence shows that in another policy of insurance taken out through the same agent, Perdue, insurance to the amount of $500 was expressly procured upon the store, furniture and fixtures and bank vault. By the terms of this

policy the store and office furniture and fixtures, including an iron safe, were expressly excluded.

The motion for rehearing is overruled.

*Affirmed.*

Writ of error granted. Dismissed by agreement, May 3, 1912.