**REPUBLIC INS. CO. v. WATSON et al.**

**No. 2548.**

Court of Civil Appeals of Texas. Beaumont.
April 5, 1934.

Rehearing Denied April 11, 1934.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellant.

Dallas Ivey, of Center, for appellee.

O'QUINN, Justice.

Mrs. Neoma Watson, as plaintiff, sued appellant to recover upon a fire insurance policy in the sum of $1,000. This insurance policy had been issued by its agents Motley & Motley, at Tenaha, Tex., insuring a dwelling house in said town for the period of one year. The policy was issued January 8, 1932, and the house was burned October 28, 1932.

Appellant answered denying liability on the grounds: (a) That the premium for the policy had not been paid; (b) that the policy had been canceled because of nonpayment of premium long before the fire; (c) that said policy provided the insurance was effective only so long and while the building was occupied by the owner as a dwelling, and that it was not so occupied by the owner at the time of the fire, nor for more than 60 days prior thereto; and (d) that said policy provided that it should be void and of no force if the insured building was vacant for more than 30 days before the fire, and that said building was so vacant and unoccupied for more than 30 days prior thereto.

Plaintiff, appellee Watson, by supplemental petition replied that the premium was not paid at the time the policy was issued, but arrangements were made with appellant's agents, Motley & Motley, to pay the premium later, and the premium was so paid; she denied that the policy had ever been canceled; that when she paid the premium on September 8, 1932, appellant's said agents accepted said payment and retained same in no manner advising her that the policy had been canceled; and that if said policy had been canceled, or attempted to be so done, it was without notice to her and without her consent, and without returning to her the premium she had paid. She also denied that the insured premises had at any time been vacant, but said that shortly before the fire because of her personal illness it was necessary for her to, and she did, go to the home of her father, who resided at Joaquin, a few miles from Tenaha, to be cared for, but that all of her household goods, personal belongings, cow, and other property was left at her said home and that it was her intention to return to her home as soon as she could, and would have done so but for the house being destroyed by fire; that when she left to go to her father's she arranged with

a friend and neighbor to look after and take care of her said place and property; that appellant's agents, Motley & Motley, knew that she was at the home of her father and why she was there; that they communicated with her by mail on August 19, 1932, sending her a statement of the amount of premiums she was due on said policy of insurance, and that on September 8, 1932, she sent the amount in full to said agents by her father, which said money they accepted and ever since kept without any mention that her said policy had been canceled; that she and her father were well known to Mr. Luke Motley and Jack Motley composing the firm of Motley & Motley, agents for appellant; that said agents were also engaged in and connected with the bank at Tenaha, and at the time she took out the insurance policy she made arrangements with them to pay the premiums at a later date through the bank, and that she left the policy with them to be kept in the bank for safe-keeping and never saw it afterwards; that had appellant or its said agents notified her that they had canceled her policy she could have, and would have, taken out other insurance to protect her said property, and that by their conduct in the premises appellant was estopped from insisting that said policy was canceled or that same was void by reason of her temporary absence which and the reason therefor were known to said agents; and she denied that said building was either vacant or unoccupied, and that appellant had waived the provisions of the policy as to vacancy and occupancy.

J. M. Wall, as executor of the estate of Mrs. N. J. Wall, intervened, setting up that there was a loss payable clause to the estate of Mrs. N. J. Wall, in the policy of insurance, alleging that said estate had and held a lien on the insured property, and prayed for judgment for the amount of the debt due the estate. Intervener also adopted the defensive pleadings of appellee, Mrs. Neoma Watson.

Appellant replied to these pleadings by various exceptions, and denied seriatim all the matters alleged in appellee's supplemental petition, denied that the premium had been paid, and pleaded the provisions of the policy relating to vacancy and occupancy.

At the conclusion of the evidence appellant requested an instructed verdict in its favor which was refused. The case was then tried to a jury upon special issues, in answer to which the jury found: (a) That the premium had been paid; (b) that said premium was paid on September 8, 1932; (c) that the policy was left with appellant's agents, Motley &

Motley, for safe-keeping; (d) that said agents knew that the house was unoccupied; (e) that they acquired this information August 19, 1932; (f) that on August 9, 1932, said agents mailed notice to appellee, Mrs. Watson, that the policy had been canceled; (g) that Mrs. Watson did not receive said notice of cancellation. In response to special issues requested by appellant, the jury found: (a) That the house was unoccupied for more than 30 days before the fire; (b) and that the house was not occupied by the owner as a dwelling at the time of the fire.

Upon receipt of the verdict, appellant moved for judgment non obstante veredicto. This was refused. Judgment was rendered for appellees in the sum of $1,025; for Mrs. Watson, $791.67, and for intervener, $233.33. Motion for a new trial was overruled, and appellant appeals.

There are 38 propositions based upon 76 assignments of error. This opinion would be inordinately long if we were to discuss in seriatim all of the assignments or propositions, and we do not believe any good purpose could be served by so doing. So, we shall discuss only what we believe to be the controlling questions.

The policy in question was duly issued, and the jury found was left with Motley & Motley, appellant's agents, at Tenaha for safe-keeping in the local bank of which one of said agents, Jack Motley, was cashier, and in which said bank said agents kept their office of insurance agency. Mrs. Watson was well known to said agents, as was her home which they insured. The premium was not paid at the time the policy was issued, but arrangements were made with said agents for the issuance of the policy and the premium was to be paid through the bank later. This seems not to be disputed. That the house was Mrs. Watson's private residence, and was so occupied by her at the time the policy was issued, is without dispute. That about August 15, 1932, she became ill and went to her father's home at Joaquin near Tenaha to be taken care of and that appellant's agents knew this seems certain. Also, that her absence was to be only temporary is not questioned. That she left all of her household goods, personal belongings, cow, and other property in and at said residence, and same to be and was looked after and cared for by neighbor friends, is not denied. At the time she went to her father's the premium had not been paid. On August 9, 1932, said agents, Motley & Motley, per Jack Motley, wrote Mrs. George Watson (it appears that Mrs. Neoma Watson was also known as Mrs.

George Watson), addressing her at Tenaha, that her insurance policy was canceled effective of that date. The receipt of this letter by Mrs. Watson was denied and the jury found that she did not receive same. The letter was not registered, and the policy required five days' notice prior to being canceled. The policy remained in the possession of said agents at the bank. After writing the letter to Mrs. Watson, said agents stamped the policy, "Cancelled," and returned same to the home office at Dallas, Tex. As the premium was not paid at the time the policy was issued, Motley & Motley themselves paid the premium when they sent in report of same, and when the policy was received at the home office stamped, "Cancelled," they were credited with the unearned portion of the premium, $4.58. After this, on August 19, 1932, said agents per Luke Motley wrote to Mrs. Watson at Tenaha: "We are forced to collect or cancel your 2 insurance policies. Please arrange at once." Upon receipt of this notice, Mrs. Watson's father, W. R. Reece, who was well known to said agents, at once went to the bank and paid the insurance premium, $11.58, on this policy. This payment was received and retained until and after the house was burned. No mention or intimation was made to Reece or to Mrs. Watson that the policy had already been canceled or that there had been any previous notice to her relative to same. The policy provided that five days' notice of cancellation by the company be given the insured.

■ Mrs. Watson not having received any notice that her policy was canceled, or was to be canceled, and the undisputed fact that appellant's agents that issued the policy, after the date said policy was stamped, "Cancelled," and returned to the home office of the insurance company, sent notice to Mrs. Watson demanding payment of the premium on the policy, or that *it would be canceled*, thus stating that the policy was still in force, and then accepting payment of the premium and retaining same, appellants cannot be heard to claim the policy was canceled and not in effect when the house was burned; their acts and representations estop them from so claiming.

■ Appellant's assignment that the policy was void and not enforceable, because the house was vacant and had been for more than ten days before the fire, is overruled. Under the facts above set out it could not be seriously contended that the house was vacant. It was the home of its owner, Mrs. Watson, and as such actually occupied by her. At the time of its destruction by fire, it contained her household goods, the most of her personal effects, and while Mrs. Watson was away temporarily, it was her intention to shortly return. The word "vacant" has no technical or peculiar meaning. In its ordinary sense, it means "empty," "not filled," "entire abandonment." 66 C. J. pp. 386, 387; Agricultural Ins. Co. v. Owens (Tex. Civ. App.) 132 S. W. 828; Southern Nat. Ins. Co. v. Cobb (Tex. Civ. App.) 180 S. W. 155 (writ refused); Florca v. Ins. Co., 225 Mo. App. 49, 32 S.W.(2d) 111; Kampen v. Ins. Co., 116 Minn. 68, 71, 133 N. W. 163.

■■ Appellant's contention that no recovery could be had upon the policy because it contained a provision that if the dwelling house insured had become and was unoccupied for a period of more than thirty days said policy would be void, and as the undisputed evidence showed that the insured premises had been unoccupied for more than thirty days before the fire, the policy was void and of no effect, is overruled.

Whether a dwelling house is occupied or unoccupied must depend upon the facts of each particular case. In general a dwelling house is occupied when human beings habitually live in it as a place of abode. When it ceases to be used for living purposes or as a customary place of human habitation, it is unoccupied. However, it is not necessary that some person shall live in the house continuously, but it must be a usual place of abode, and there must not be a cessation of occupancy for any considerable length of time. 26 C. J. § 259, p. 213; Washington Fire Ins. Co. v. Cobb (Tex. Civ. App.) 163 S. W. 608. A mere temporary absence of the occupants from the premises, there being an intention to return, will not render the building unoccupied, so as to void the policy. 26 C. J. § 262, p. 216; Westchester Fire Ins. Co. v. Redditt (Tex. Civ. App.) 196 S. W. 334 (writ refused). In the instant case the undisputed facts are that Mrs. Watson owned the dwelling insured and resided in same. She became ill and because of same went to her father's home to be cared for, leaving her household goods and most of her wearing apparel in the house. She left her cow and chickens and arranged with two friends and neighbors to look after the premises and take care of the cow and poultry, intending to shortly return to and occupy her home. She left the key to the house with one of her said neighbor friends and the house was kept locked. One of her friends who assisted in looking after the premises lived next door to the house and saw the house every day. Her sister, father, and her own daughter fre-

quently—several times a week—went to the house, got the key, went in, and inspected the premises. She left for her father's on August 16, and the house was burned October 28, 1932. She would have returned within a short time after the fire, but for the destruction of the house. In view of the holding in the Redditt Case, supra, which is very similar as to the facts, and in which the Supreme Court refused a writ of error, there was no such "unoccupancy" as to void the policy.

Moreover, we think it should be held that as appellant's agents, Motley & Motley, knew that Mrs. Watson was sick and away from home at her father's and one of the firm wrote her *there* stating that they must collect the insurance premiums she owed them, or cancel her policy, and asking her to arrange for same at once, and in obedience *to such request or notice*, she caused the premiums to be paid, which payment said agents accepted and retained, this with the knowledge that at the time the premium was paid the insured premises were and for a time would remain unoccupied, the provision relative to occupancy was thereby waived, and appellant cannot now be heard to urge same in forfeiture of her policy in avoidance of its liability thereunder. Springfield Fire & Marine Ins. Co. v. Brown (Tex. Civ. App.) 13 S.W.(2d) 916; Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435 (writ refused); Law v. Texas State Mut. Fire Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539.

While the holdings in the cited cases were where policies had been issued and payment of premiums accepted when conditions existed within the knowledge of the agent accepting the premiums and issuing the policies, which, if insisted upon later, would render the policy void when the premium was paid, or might do so at the expiration of a certain period, the insurer had waived the provision violated. We can see no good reason why this just and equitable rule should not apply with equal force where, as in the instant case, an agent accepts payment of the premium on a policy already in existence with knowledge of facts upon which its validity may be disputed, and then later insist upon these facts as ground of avoidance of liability under the policy. This, in law, would be a fraud which the courts will not aid, but will hold that provision of the policy claimed to have been breached was waived.

It would be a fraud upon the insured, Mrs. Watson, to permit the insurance company, with knowledge that she was not then actually occupying the insured dwelling, and perhaps would not do so for 30 days, but was temporarily away, to accept her payment of the premium and thus cause her to believe that her property was insured, and then after loss to invoke the nonoccupancy clause of the policy as a breach of condition, and thus escape the liability for which the premium had been paid. 26 C. J. pp. 313, 314, § 389. Liverpool & L. & G. Ins. Co. v. Ende, 65 Tex. 118, 123; Hartford Fire Ins. Co. v. Post, 25 Tex. Civ. App. 428, 62 S. W. 140.

Numerous assignments, not discussed, are presented. All of them have been considered, and it is not believed that any of them show reversible error, and all of them are overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.