John J. KNOFF et al., Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY CO., Appellee.

No. 15526.

Court of Civil Appeals of Texas.

(1st Dist.).

Nov. 13, 1969.

Howard M. Wayland, M. B. Richardson, Houston, for appellants.

Bryan, Patton & Westmoreland, Chilton Bryan, J. H. Westmoreland, Houston, for appellee.

BELL, Chief Justice.

Appellants sued appellee to recover $5,-000.00, the amount of a fire insurance policy issued by appellee to the owner of a residence at 7840 Dayton Street in Houston. The owner was Lula McLaughlin. She died in 1963, a few months after the policy was issued. A fire occurred at the residence May 19, 1966. In response to appellants' suit, appellee denied liability by pleading the absence of the requisite proof of loss and exclusions contained in the policy. The "exclusions" were that there had been an increase in the hazards insured against and that the house had been vacant beyond a period of thirty consecutive days. At the conclusion of the testimony the trial court, on motion of appellee, withdrew the case from the jury and rendered judgment that appellants take nothing. The judgment is based on the court's conclusion that appellants had failed to prove the filing of the requisite proof of loss and that appellants failed to prove the property was not vacant and that the hazards insured against had not increased.

■ Appellee in its brief and in oral argument in effect concedes there was a fact issue for the jury on whether there was a total loss. If a jury should find that the residence was totally destroyed, it being real property, no proof of loss would be necessary. In such case suit could be brought on the policy as a liquidated demand. Article 6.13, Vernon's Texas Insurance Code; American Central Ins. Co. v. Terry, 26 S.W.2d 162 (Tex.Com.App.); Hanover Fire Insurance Co. v. Nash et al., Tex.Civ.App., 67 S.W.2d 452 (CCA), writ ref.

■ Also, appellee admits an unsworn claim was filed within 91 days after the date of the fire and liability was denied within said period. Under such circumstances there would be a waiver of the necessity to file sworn proof of loss. Niagara Insurance Co. v. Lee, 73 Tex. 641, 11 S.W. 1024; Austin Building Co. v. National Union Fire Insurance Co., Tex.Civ. App., 403 S.W.2d 499 (CCA), ref., n. r. e.

The result of the above is that the trial court was in error in concluding that recovery could not be had because of the failure to file a sworn proof of loss within 91 days after the fire.

Mrs. Felts, a daughter of Mrs. McLaughlin, testified that Mrs. Simmons, her sister, died May 1, 1965.

■ Mrs. Segal, a daughter of Mrs. McLaughlin, lived with her mother for many years at the insured home at 7840 Dayton Street in Houston. She was living there when her mother died in November, 1963. Her testimony is not entirely clear as to all specific dates with regard to her relationship to the property after her mother's death. She testified that after her mother's death she lived there over a year. She was asked by her counsel, "Now you were not living there at the time this alleged fire occurred, were you?" She answered, "No, sir. I was in the process of moving over to my sister's house." Her sister, to whom she referred, was Mrs. Simmons who died May 1, 1965, and her home was at 1111 Daisy Street in Houston. She stated she left the Dayton Street home after Mrs. Simmons died. When asked how long prior to the fire it was since she had lived at her mother's home, she answered, "Well, I really hadn't moved out altogether." She stated she was in the process of moving over a period of months because she had to do all the mov-

ing herself. When asked on cross examination whether she had been to the house since she moved out in 1964, she stated she was over there nearly every week. When asked if she had lived there since 1964 when she moved out, she answered, "Oh, I have spent many a night over there." She made her sister's home hers after her sister died. She gave 1111 Daisy as her home address. She didn't remember when they put the house up for sale because she wasn't good at remembering dates. They put it up for sale after she „was in the process of moving out. She had no intention of going back and that is the reason they put it up for sale.

Mrs. Segal listed, so far as she remembered, the contents of the house when it burned. In the living room there were two tables and a desk. In the dining room, in the closet, there were two beds that had been upstairs. In the kitchen was a small table. In one bedroom was a rug and chair. In another room was the end of a bed. On the sleeping porch there were just draperies. In the part where she lived she had a lot of clothes in the closet that she had not intended taking. There were also a bed and two mattresses. She had given the church the two ice boxes before she moved. In the upstairs apartment were a table and four chairs. After her mother's death she and Mrs. Felts had sold most of the furniture and divided the proceeds.

The house was an old one, it having, according to a grandson, Mr. Terrell, been built around the turn of the century. Mrs. Segal testified the house had been broken into because it had glass doors. Anyone could go in or out of the house.

Mr. Terrell testified the house was made of shiplap siding. It was papered inside. It had an asphalt composition shingle roof. He had been to the house about two weeks before the fire. The house would be broken into and then boarded up; broken into again and again boarded up. He went to the house the morning after the fire. In the left front bedroom was the frame of a metal bed. There were a couple of ice box hulks. There was the hulk of a stove. His grandmother's old bed was in the part of the front room that was still there. There was nothing else left to check.

Tom Dudley was employed to remove what little was left of the house. He saw stoves and furniture that were "burnt". He also saw a Frigidaire and stoves and a bed. The other stuff was burned and he could not tell what else was there.

A picture taken by a representative of appellee in December, 1966, showed a gas range in the kitchen.

Appellee contends the testimony establishes as a matter of law that the house was vacant and the hazard was increased by means within the knowledge and control of the assured and recovery is thus defeated.

█ Since the court rendered judgment as a matter of law and refused to submit any issues to the jury, we must view the evidence most favorably to appellant. If there are evidentiary facts from which the reasonable mind could reasonably infer that the property was not vacant and that the hazard had not been increased, then issues should have been submitted to the jury.

█ Under the heading "Basic Conditions" the policy provides as follows:

"Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring * * *:

"(a) while the hazard is increased by any means within the knowledge and control of the insured, provided such increase in hazard is not usual and incidental to the occupancy as herein described; or

"(b) while a described building, whether intended for occupancy by owner or tenant, is vacant beyond a period of thirty consecutive days; * * *"

These provisions are not exclusions but are conditions subsequent which will avoid

liability. The burden is, therefore, on the insurer to plead and prove the occurrence of the conditions. Continental Insurance Co. of New York v. Nabors et al., Tex. Civ.App., 6 S.W.2d 151 (CCA), writ ref.; Dixie Fire Ins. Co. v. Henson, Tex.Civ. App., 277 S.W. 756 (CCA), aff'd 285 S.W. 265 (Tex.Com.App.); St. Paul Fire & Marine Ins. Co. v. Westmoreland, 130 Tex. 65, 105 S.W.2d 203 (Tex.Com.App.); R. B. Co. v. Aetna Ins. Co., 299 F.2d 753 (5th Cir.).

We are of the view that on the basis of the testimony above recited there was a fact issue as to whether the house was vacant.

■ It will be noted that the term "unoccupied" is not used but only the term "vacant". The terms are not synonymous. The term vacant means "entire abandonment, deprived of contents, empty." Phoenix Assurance Co., Ltd. of London v. Shepherd et ux, 134 Tex. 669, 137 S.W.2d 996 (Tex.Com.App.), opinion approved; Southern National Ins. Co. v. Cobb, Tex.Civ. App., 180 S.W. 155 (CCA), writ ref.

■ In the Shepherd case the trial court had defined vacant as meaning "empty, that is, without contents of substantial value." The Court of Civil Appeals approved the definition (115 S.W.2d 992). The Commission of Appeals defined the term vacant as above stated. The definition given by the trial court did·not include the term "entire abandonment, deprived of contents". It did use the term "without contents of substantial value". The Commission of Appeals' definition of vacancy did not include the term "without contents of substantial value". The evidence in the case showed the monetary value of the furniture was about $150.00 to $200.00. The Commission of Appeals stated the trial court's definition was "substantially" correct. We feel the effect of the decision by the Commission of Appeals is to hold that the term "substantial value" does not mean merely substantial monetary value, but the term includes value attributable to the util-

ity of the furniture. It is well known that furniture, because of age and condition, may have little monetary value, but to the owner or user has substantial utility, and retention in the house would evidence the absence of complete abandonment.

■ From the evidence recited we are of the view that the reasonable mind could conclude there was furniture of substantial value in the house and therefore it was not vacant. Certainly appellee has not shown as a matter of law that the furniture was not of substantial value.

Appellant urges that the provision with regard to increased hazard will not preclude recovery here because the policy states in the condition subsequent that the increase in hazard must be by means within the knowledge and control of the insured and the named insured was Mrs. McLaughlin, who died in 1963, and "legal representatives". Appellant reasons that since Mrs. McLaughlin was dead she could have no knowledge or control of the things alleged to have increased the hazard. Further, appellant reasons that no legal representative was appointed until February, 1968, so the legal representative could have had no knowledge or control of the means allegedly increasing the hazard.

■ No cases are cited us. We are of the view that the term "legal representatives" is used in no technical sense, but is used so as to include successors in interest in the real property insured. See 44 Am. Jur.2d, Section 1754, and Loomis v. Vernon Mutual Fire Ins. Co., 14 Wis.2d 470, 111 N.W.2d 443. Upon the death of a person dying intestate, as did Mrs. McLaughlin, title to her property vested in her heirs. As heirs they had the right, in the absence of an administrator, or necessity for one, to handle the property. In fact, in this case they did so. We, therefore, hold under the facts of this case, heirs are included in the term "legal representatives". They as heirs would be entitled to the benefit of the insurance. They were entitled to the beneficial use of the proper-

ty. The heirs could, therefore, control the manner of the use of the property. They could effectively give notice in writing of any increase in hazard.

 We are of the view, however, that the trial court erred in holding as a matter of law that there had been an increase in hazard.

There is no provision in the policy that the fact that the house should become unoccupied would void the policy. A dwelling may be unoccupied in the sense that no one is living there continuously, yet such attention in the protection of the property may be given by the owner as to prevent there being an increase in hazard. The total of all facts must be considered. Whether there has been an increase in hazard or not must be determined by a comparison with the conditions existing at the time the policy was written. The mere fact of a dwelling being unoccupied does not establish an increase in risk as a matter of law. Hartford Fire Insurance Co. v. Dorroh, 63 Tex.Civ.App. 560, 133 S.W. 465(CCA), error dism.

In the case before us the policy was written when the dwelling was owner-occupied, it being occupied by Mrs. McLaughlin and Mrs. Segal. There is, however, no warranty that such occupancy will continue. In the case of Dixie Fire Ins. Co. v. Henson, Tex.Civ.App., 277 S.W. 756 (CCA), aff'd 285 S.W. 265 (Tex.Com.App.), the policy provided for coverage for the dwelling "while occupied by owner and not otherwise * * *" Later it was occupied by a tenant and while so occupied it was destroyed by fire. The insurer contended this increased the hazard and showed the premium for a tenant-occupied dwelling was greater than an owner-occupied one. The court held this not to be conclusive. It held there was conflicting evidence as to whether in fact occupancy by a tenant increased the risk and there was thus a fact issue for the jury.

In the case of Womble v. Dubuque Fire & Marine Ins. Co., 310 Mass. 142, 37 N.E.

2d 263, the court had before it a case where a church in use was insured. Subsequently there was a fire and the building could not be used until repairs were made. They had not been made because of a question as to title. The evidence showed the church was badly wrecked by the fire, especially on the roof and the second floor. There was a 15-foot hole in the roof. The leaded glass had been broken out. No repairs had been made on the windows, but they had been boarded up. There was a second fire. The insurer defended the suit to recover loss caused by the second fire on the ground that the above recited facts had increased the risk. The court held only a fact issue was raised. The court stated the burden of proof was on the insurer to show an increase in risk. It stated that the character of the neighborhood, the extent of watch maintained by police or others over the premises and various other elements entering into the risk both before and after the fire were to be considered.

In the case before us the house, when insured in 1963, was an old house having been built around the turn of the century. It burned only two years later. The evidence shows that when the dwelling was broken into the places where the breaking occurred were boarded up. The evidence shows the house had not been abandoned. Mr. Terrell made a few repairs. He went by the house occasionally. Mrs. Segal went by the house nearly every week. She slept there many a night. She stated she had not completely moved out though she did not intend to again make the property her home. There is no evidence showing any material change in the neighborhood. There is no evidence to show no police watch. All of these matters are material on the issue of increase in risk and the burden is on the insurer to show an increase in risk.

There is no competent evidence to show the cause of the fire.

 The court erroneously admitted the records of the Fire Marshall of the

City of Houston which consisted of a report made by the investigator. The report was the record required by law to be kept. We know of no law which makes them admissible for this reason.

The report consists largely of hearsay statements from two persons to the investigators that two young men had told them that shortly before the fire started they saw a drunk man go into the house. The young men were never contacted. Too, the investigator's conclusion that the fire was of an incendiary nature was included. Apparently the purpose was to show the fire was of incendiary nature.

The statements were hearsay and we know of no exception to the hearsay rule making them admissible. The records were not admissible under Article 3737e, Vernon's Ann.Tex.St., as appellee contends, because the information recorded by the investigator did not come from a person having personal knowledge of the facts. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (S.Ct.).

Reversed and remanded.