# United States Court of Appeals for the Fifth Circuit

―――――――――

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2025

Lyle W. Cayce
Clerk

No. 24-40086

―――――――――

CRYSTAL CHILDERS; BRADLEY CHILDERS,

*Plaintiffs—Appellants*,

*versus*

ALLSTATE INDEMNITY COMPANY,

*Defendant—Appellee*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:23-CV-82

―――――――――――――――――――――――――

Before ELROD, *Chief Judge*, and JONES, and STEWART, *Circuit Judges*.
PER CURIAM:[*]

Not every insurance claim ends in a payout. Bradley and Crystal Childers (the "Childerses"), a married couple, bought a rental property, insuring it with Allstate Indemnity Company ("Allstate"). Someone vandalized the property thereafter. The Childerses filed an insurance claim for the resulting damage. Allstate denied it. Undeterred, the couple sued.

―――――――――――――――――――――

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-40086

Allstate moved for summary judgment and won. This case is now before us. Finding no error, we AFFIRM.

**I**

For six years, the Childerses lived in their home in Wells, Texas. In 2021, they purchased an investment rental property in Lufkin, Texas. To safeguard their investment, the Childerses secured a "Landlords Package Policy" (the "Policy") from Allstate. The Policy contained two coverage exceptions:

> 16. Theft or burglary. [] [W]e will cover damage to the exterior of covered building structures caused by the breaking in of a burglar or burglars if the dwelling is completed and has not been vacant or unoccupied for more than 60 consecutive days immediately prior to the loss. When we cover damage to the exterior of covered building structures caused by a burglar or burglars, we will also cover damage to interior surfaces of exterior doors and windows damaged by the break-in.

> 17. Vandalism. [] [W]e do cover sudden and accidental direct physical loss caused by fire resulting from vandalism unless your dwelling has been vacant or unoccupied for more than 60 consecutive days immediately prior to the vandalism.

After acquiring the property and obtaining insurance, the Childerses undertook repairs and renovations. According to Crystal's deposition, "from when [the Childerses] bought [the property] to when the loss happened, nobody had been living there." The property did contain furniture, though, including vanities, dressers, and mirrors.

Trouble followed. On March 29, 2022, Bradley's grandparents noticed something amiss as they drove past the rental property—the pad intended for a new air-conditioning unit was empty. Upon receiving this news, the Childerses hurried to the property. There, they discovered that

2

No. 24-40086

someone had burglarized and vandalized the home. The intruder caused substantial damage, stealing the air-conditioning unit, copper wiring, and plumbing. The Childerses contacted the police, who only found a single fingerprint. Despite this lead, the perpetrator was never identified.

On that same day, Crystal submitted a claim to Allstate, seeking compensation for the property damage. Crystal testified that Allstate initially assured her that the Policy would cover the damages. A few days later, however, Allstate notified Crystal that it was denying her claim. Allstate based its denial on its estimation that the property had been vacant or unoccupied for more than 60 consecutive days immediately before the loss.

Dissatisfied, the Childerses sued Allstate in Texas state court. Allstate removed the case to federal court, asserting diversity jurisdiction. The Childerses brought a series of claims, accusing Allstate, *inter alia*, of breaching their contract and their duty of good faith and fair dealing. After the initial pleadings, Allstate served the Childerses with several requests for admissions under Federal Rule of Civil Procedure 36. The most relevant, Requests for Admissions No. 1–5, ask for the following:

> REQUEST FOR ADMISSION NO. 1 Plaintiffs did not live at the property located at 1884 S. FM 706, Lufkin, TX 75904 during the period of January 1, 2022 to March 29, 2022.

> REQUEST FOR ADMISSION NO. 2 Plaintiffs' property located at 1884 S. FM 706, Lufkin, TX 75904 was not occupied during the period of January 1, 2022 to March 29, 2022.

> REQUEST FOR ADMISSION NO. 3 Plaintiffs' property located at 1884 S. FM 706, Lufkin, TX 75904 was vacant during the period of January 1, 2022 to March 29, 2022.

> REQUEST FOR ADMISSION NO. 4 You did not report the March 29, 2022 damage to the structure to law enforcement.

No. 24-40086

> REQUEST FOR ADMISSION NO. 5 Since you obtained
> ownership of the property located at 1884 S. FM 706, Lufkin,
> TX 75904, a tenant has not resided at the property.

The Childerses never responded. Given this lack of response, the district court deemed these matters admitted under Federal Rule of Civil Procedure 36.

Following discovery, Allstate moved for summary judgment. The Childerses responded, submitting an opposing motion and an affidavit from Crystal. In Paragraph 3 of Crystal's affidavit, they asserted that the rental property was their "home" and that they resided there. After the district court reviewed the record, it granted summary judgment. It determined that Paragraph 3 of Crystal's affidavit was a "sham." It reasoned that the paragraph directly conflicted with Crystal's deposition testimony. Seeking redress, the Childerses timely appealed.

## II

On summary judgment, we review a district court's legal conclusions *de novo. See Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We also "review evidence in the light most favorable to the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). At that stage, the same evidentiary rules apply that do at trial. *See Matter of Highland Cap. Mgmt., L.P.*, 116 F.4th 422, 430 (5th Cir. 2024). We review a district court's evidentiary rulings for "an abuse of discretion, subject to harmless-error review." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022) (internal quotation marks omitted) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996)).

No. 24-40086

### III

The issue here is whether the district court erred in granting Allstate's motion for summary judgment. The Childerses say yes. They complain that the district court erred in (A) relying on the deemed admissions; (B) misapplying the sham affidavit doctrine; and (C) disregarding a genuine dispute of material fact on the Policy's exceptions. We address each in turn.

### A.

We first address whether the district court erred in relying on the deemed admissions. The Childerses say yes. They argue that Allstate waived its right to rely on the deemed admissions. These deemed admissions, in their estimation, are legal conclusions, not factual determinations. This distinction, they say, Texas law and the Federal Rule of Civil Procedure 36 prohibit. According to them, Texas procedural law governs these deemed admissions because it is outcome-determinative.[1] Still, they acknowledge that Federal Rule of Civil Procedure 36 would govern these admissions if federal law were to apply.

The Childerses, however, forfeited this argument because they failed to raise it in the district court. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (explaining the difference between "waiver" and "forfeiture" and explaining that "[a] party *forfeits* an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal" (emphasis added)). Instead of challenging the admissions, the Childerses argued, in the district court, that the Policy covered their loss as they "intended to reside in their home at all relevant times" and planned to "physically move as soon as the remodeling work was complete." This

---

[1] The Childerses cite no case in support of their position.

5

No. 24-40086

omission is notable because Allstate's motion explicitly relied on the "policy coverages [and] deemed admissions." We therefore do not consider this argument any further. *See id.*[2]

**B.**

We next address whether the district court abused its discretion in striking Paragraph 3 of Crystal's affidavit under the sham-affidavit doctrine. The Childerses insist that the paragraph supplements her deposition rather than contradicts it. We disagree.

A district court must consider all evidence before it in deciding a motion for summary judgment and "cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980); *see Seigler*, 30 F.4th at 477. But that rule bends where the sham-affidavit doctrine applies. "[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). A litigant cannot conjure a factual dispute by contradicting earlier testimony to evade summary judgment. *See Seigler*, 30 F.4th at 477. The doctrine draws from a straightforward principle—"a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary

---

[2] Waiver aside, the Childerses misconstrue the law. Texas procedural rules do not govern here. In diversity cases, federal courts apply the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 470 (1965). *Erie* does not void a Federal Rule. *See id.* A Federal Rule governs unless it violates the Enabling Act or the Constitution. *See Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 264 n.2 (5th Cir. 1997). Explained differently, the *Erie* doctrine does not dictate the validity of a Federal Rule. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 747 (1980). Accordingly, Texas procedural law would not govern here because a Federal Rule governs deemed admissions. *See* Fed. R. Civ. P. 36.

6

judgment." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

"[N]ot every discrepancy in an affidavit" warrants disregarding it at summary judgment. *Seigler*, 30 F.4th at 477. The sham-affidavit doctrine sets a high bar, applying only to testimony that is "inherently inconsistent" with prior statements. *See id.*; *cf. Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988). An affidavit that "supplements rather than contradicts prior deposition testimony" exceeds the doctrine's ambit. *Seigler*, 30 F.4th at 477. The doctrine is inapplicable where discrepancies are reconcilable, and the statements are not "inherently inconsistent." *Id.*

The district court here did not abuse its discretion in applying the sham-affidavit doctrine. Crystal testified under oath that she and her husband lived in Wells, Texas, for six years. She testified that the Lufkin property was purchased as "[a] rental property" and remained unoccupied while they searched for a tenant. She confirmed without hesitation that "nobody had been living" at the property since its purchase. Later, after Allstate moved for summary judgment, Crystal submitted an affidavit claiming that she "reside[d] at" the Lufkin property. Paragraph 3 of this affidavit was the heart of the Childerses' response, asserting that the property was their "home" at all relevant times. Crystal therefore presented the district court with contradiction, not clarification. *See id.*; *cf. Clark*, 854 F.2d at 767.

The Childerses also failed to reconcile the two statements. Summary judgment requires true factual disputes, not contradictions invented to escape it. *See Doe*, 220 F.3d at 386. For these reasons, we hold that the district court acted within its discretion in striking Paragraph 3 of Crystal's affidavit under the sham affidavit doctrine.

No. 24-40086

## C.

We turn to whether a genuine dispute of material fact exists concerning the Policy's vacancy and occupancy exceptions. The Childerses argue that the Lufkin property was neither "vacant" nor "unoccupied" for over 60 days, calling it their "secondary residence." They posit that Texas election law defines "residence" and must guide the Policy's meaning. According to them, Texas election law permits a person to have multiple residences. They further assert that the Policy does not define the terms "residence" and "reside," rendering the Policy ambiguous. This purported ambiguity would have us construe the Policy in their favor. Their argument, however, is unpersuasive.

Sitting here in diversity, we apply Texas substantive law. *See Advanced Indicator & Mfg., Inc v. Acadia Ins. Co.*, 50 F.4th 469, 476 (5th Cir. 2022) (applying Texas law in diversity). Under Texas law, to prevail on a breach of insurance contract claim, the insured must prove (1) a valid contract; (2) performance or tendered performance by the insured; (3) breach by the insurer; and (4) damages caused by the breach. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). The insured must also show that the policy covers her claims. *See id.*; *see also Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018) (applying Texas law).

Texas law treats an insurance policy like any other contract, applying general rules of construction. *See Tesoro Refin. & Mktg. Co., v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 833 F.3d 470, 474 (5th Cir. 2016). Interpreting an insurance policy is a question of law. *See Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). Ambiguities are interpreted in favor of coverage for the insured. *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). Whether a policy is

ambiguous is also a legal issue under Texas law. *See In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015). We presume that the parties intended what the text says, and we give terms their plain meaning unless the policy indicates otherwise. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) [hereinafter *Gilbert*]. Clear and definite language is unambiguous as a matter of law. *Gilbert*, 327 S.W.3d at 133.

The Policy here does not cover the Childerses' loss. It excludes coverage for theft, burglary, or vandalism if the property is "vacant or unoccupied for more than 60 consecutive days immediately prior to the loss." Here, "vacant" and "unoccupied" must be understood in their ordinary sense, not narrowly or technically. *See Gilbert*, 327 S.W.3d at 126.

"Vacant" and "unoccupied" are distinct. *Phoenix Assurance Co., Ltd., of London v. Shepherd*, 115 S.W.2d 992, 993–94 (Tex. App.—Galveston 1938), *aff'd*, 137 S.W.2d 996 (Tex. [Comm'n Op.] 1940). Under Texas law, "'[v]acant' means without inanimate objects." *Id.*; *accord Jerry v. Ky. Cent. Ins. Co.*, 836 S.W.2d 812, 815 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("[V]acant means entire abandonment, deprived of contents, empty, that is, without contents of substantial utility.").

A house is "'occupied' when human beings habitually live in it as a place of abode." *Blaylock v. Am. Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex. 1982). Conversely, "a house is unoccupied when it ceases to be used for living purposes or as a customary place of human habitation." *See id.*[3] Put simply, "unoccupied" refers to "no one living there continuously."

---

[3] *See also Republic Ins. Co. v. Watson*, 70 S.W.2d 441, 443 (Tex. Civ. App. Beaumont 1934), *writ dismissed*; *Hudson Ins. Co. v. McKnight*, 58 S.W.2d 1088, 1089 (Tex. Civ. App. Waco 1933).

No. 24-40086

*Knoff v. U.S. Fid. & Guar. Co.*, 447 S.W.2d 497, 502 (Tex. App.—Houston [1st Dist.] 1969, no writ).

Here, the Lufkin property was not vacant as it held furniture—vanities, dressers, and mirrors. *See Shepherd*, 115 S.W.2d at 993; *Knoff*, 447 S.W.2d at 501; *Jerry*, 836 S.W.2d at 815.

On occupancy, the Childerses misapply Texas law, conflating "vacant" with "unoccupied." For example, they insist that the furniture at the Lufkin property creates a genuine dispute of material fact on whether the home was unoccupied. This point misses the mark. "Unoccupied" means that a home "ceases to be used for living purposes or as a customary place of human habitation." *Blaylock*, 632 S.W.2d at 721. For this inquiry, whether the home is furnished is of no consequence. Moreover, Crystal testified that no one lived at this property, no one ever had, and no one rented this property. Because the sham affidavit doctrine bars Paragraph 3 of Crystal's affidavit, *see supra* Part III.B, no genuine dispute of material fact exists. According to Crystal's deposition, the Lufkin property was unoccupied for at least 60 days before the loss. *See Shepherd*, 115 S.W.2d at 993; *Knoff*, 447 S.W.2d at 502; *Republic Ins. Co. v. Watson*, 70 S.W.2d 441, 443 (Tex. Civ. App. Beaumont 1934).

Further, the Policy is not ambiguous. *See Gilbert*, 327 S.W.3d at 133. It defines "residence premises" as "your dwelling, other structures and land located at the address stated on the Policy Declarations." This definition addresses the insured property, not the insured's place of residence. This is, after all, a "Landlords Package Policy," implying that the Childerses do not live at the property.

Finally, nothing in the Policy links "residence premises" to whether a home is "vacant" or "unoccupied." More critically, the Childerses' theory contradicts Texas Supreme Court precedent. Their theory urges this court

to redefine "unoccupied," contradict *Blaylock*, 632 S.W.2d at 721, and ignores the law of the state's highest court. We lack that power. *See Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967) (observing that "state law as announced by the highest court of the State is to be followed" by federal courts sitting in diversity). On these grounds, we hold that there is "no genuine dispute as to any material fact" on whether the Lufkin property was vacant or unoccupied. *See Griggs*, 841 F.3d at 311–12. Thus, we conclude that the district court did not err in granting summary judgment for Allstate.

## IV

For the foregoing reasons, we AFFIRM.