**STATE FARM FIRE & CASUALTY COMPANY, Appellant,**

v.

**Hazel ULTEIG, Appellee.**

**No. 4135.**

Court of Civil Appeals of Texas.

Waco.

May 9, 1963.

Rehearing Denied May 23, 1963.

Vinson Elkins, Weems & Searls, Gaius G. Gannon, Jr., Houston, for appellant.

Butler, Binion, Rice & Cook, Thomas L. Moore, Collins & Moore, Houston, for appellee.

TIREY, Justice.

This is a suit on a policy of fire insurance issued by appellant insuring the home of Dean Ulteig and wife, Hazel, located in Houston. Appellant admitted liability unless the fire was intentionally and willfully started by the insured, and obtained the right to open and close. At the close of the evidence the Court overruled defendant's motion for instructed verdict and submitted one issue to the jury. It is:

"Do you find from a preponderance of the evidence that Dean * * * Ulteig caused the destruction of the house at 1630 Woodcrest by intentionally and willfully setting fire to it on February 5, 1960?

"In connection with the foregoing issue you are instructed as follows:

"The term 'willfully' means with evil intent or malice.

"The term 'intentionally' means a settled direction of the mind toward the accomplishment of a particular act.

"You are further instructed that in order to find that an act was 'willfully and intentionally' done you must find from a preponderance of the evidence that a person had sufficient exercise of his judgment to understand the nature and effect of his act."

To which the jury answered: "We do not".

(The parties, by agreement, took a majority verdict ten to two).

The decree recited that the Ulteigs had been granted a divorce and that Mrs. Ulteig had remarried and that she is now Mrs. Hazel E. Pilcher, and the Court decreed to her $1634.66, with interest at 6% per annum from May 5, 1960, until paid, and further decreed the sum of $3,000.00 with accrued interest until paid, and taxed all costs against the insurance company. The amounts decreed to Mrs. Pilcher are not assailed, except on the ground that there was no liability on the policy on account of the willful and intentional burning by her former husband, at which time they were separated but not divorced.

The judgment is assailed on 14 points. The first six points are grouped under one assignment and points 1 to 5 inclusive assert that the Court erred in overruling appellant's motion for instructed verdict because the evidence conclusively showed that Dean Ulteig intentionally and willfully burned the building covered by the policy; that there was no evidence and insufficient evidence to raise a fact issue that Ulteig did not willfully and intentionally set fire to the building; that the Court erred in overruling appellant's motion for judgment non obstante veredicto because there was no evidence and insufficient evidence to support the verdict. Point 6 is to the effect that the entry of the judgment in Mrs. Ulteig's favor directly contravenes the public policy of the State of Texas.

Testimony was tendered to the effect that on December 4, 1959, Mrs. Ulteig filed suit for divorce and she was awarded the temporary use of the home during the pendency of the divorce action, but her husband would not surrender the premises and Mrs. Ulteig would not press the point and she and their young son moved to the home of her sister. On February 5, 1960, the residence covered by the policy burned to the ground. At the time of the fire Ulteig was the only person living in the house. On February 8, 1960, after the fire, the Ulteigs were divorced and Mrs. Ulteig was awarded all proceeds that may be available from the fire policy. Thereafter, Ulteig was indicted by the Harris County grand jury during May 1960 term for willfully burning the house, and doing so with the intent to defraud, and on October 28, 1960, he plead guilty to the charge of arson and was sentenced to five years in the penitentiary, and later he was released on probation. Appellant tendered in evidence Ulteig's confession and the plea of guilty made in open court. It is appellant's contention that the only competent evidence in the record as to the cause of this fire was Ulteig's confession and plea of guilty that he willfully set it, and since the public policy of Texas prohibits the recovery by one spouse, even though innocent, where the other has intentionally set the fire, the appellant was entitled to an instructed verdict at the conclusion of all the evidence; or, to a judgment notwithstanding the verdict of the jury. Appellant relies on Jones v. Fidelity & Guaranty Ins. Corporation, Tex.Civ.App., 250 S.W.2d 281, w. ref., and Bridges v. Commercial Standard Ins. Co., Tex.Civ.App., 252 S.W.2d 511, n. w. h. It is appellant's contention that the foregoing cases are identical on the facts with the present appeal, in that the spouse, innocent of the arson, had separated from the other at the time of the feloniously caused fire, and was innocent of any wrong doing. Appellant also contends that Ulteig's confession and plea of guilty was admissible as a declaration against interest in view of his absence from the jurisdiction during these proceedings, and cites McCormick and Ray, Vol. 2, Sec. 1002, p. 2; also citing Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, point p. 940. Appellee's reply to the foregoing contention is to the effect that since appellant filed an admission of liability and admitted that plaintiff was entitled to recover, unless Ulteig intentionally and willfully set fire to the house, it assumed the burden of proving its defense by a perponderance of

the evidence, and that it was appellant's duty to discharge this burden. Appellee further contends that a plea of guilty on the part of Ulteig is not a bar to a civil suit; that other evidence may be received, weighed and balanced against such plea of guilty, and that the evidence is to be viewed favorably to the jury's verdict if there is evidence to support it. Citing Simmons & Simmons Construction Company v. Rea, 155 Tex. 353, 286 S.W.2d 415. Appellee contends that she is entitled to tender evidence and make inquiry as to the conduct of her former husband. In this connection, evidence was tendered to the effect that Ulteig was a heavy smoker and drinker, and was inclined to fall asleep with burning cigarettes; that Mrs. Ulteig had knowledge of three times that he had set a contour chair on fire when he fell asleep with a burning cigarette; that while her husband was drunk and smoking he had also set fire to blankets and quilts; that on the afternoon of February 5, 1960, Ulteig started drinking; that about 10:30 that evening he was seen driving away from his home, and that he usually made a trip to the Seven-Eleven Store for beer before it closed in the evening; that the witness Connor, one of Ulteig's neighbors, was awakened by Ulteig knocking at the door and shouting shortly after he had gone to bed; that Connor's wife said: "That is Dean, don't let him in, he's drunk"; that Connor went to the door and Ulteig told him: "My house is on fire"; that Ulteig was dressed in his under shorts, and said he leaped out a window; that about 12:30 a neighbor, Mrs. Slavin, woke up and saw fire and called Mrs. Ulteig, who, with her son, was staying with her sister; that while she was talking to Mrs. Ulteig she could hear Dean Ulteig at the door of the house where Mrs. Ulteig was staying; that Dean said: "Mike (meaning Mrs. Ulteig) I have to talk to you. I know what you think, but I didn't burn the house." That Ulteig was drunk and that he told Mrs. Ulteig that he did not set the fire; that he did not know how it started. Connor further testi-

fied to the effect that the fire started in the den; that he saw nothing to indicate that the fire was intentionally set; that he smelled no kerosene or gasoline or anything inflammable when he went to the scene immediately after being awakened. Testimony was tendered to the effect that Johnson, the local agent for the insurance company, inspected the premises a day or so later in the company of Ulteig and found no evidence of arson; that Ulteig told him: That the first thing he remembered that the house was full of smoke, and that he had to jump out the front window; that on February 8, 1960, Johnson sent forward the notice of the loss, listing the cause of the fire as unknown; that Ulteig moved back into the house the same night of the fire and continued to live there; that he had no other place to stay; that after the fire the neighbors could see Ulteig showing his friends about the site of the fire. Testimony was tendered to the effect that because of Ulteig's drunkenness he was refused visitation rights with his son, and made persistent efforts to see the child; that he made a threat to Mrs. Ulteig with respect to a confession if she did not let him see the child, but Mrs. Ulteig still refused. Testimony was tendered that up to this time the insurance company had never given any indication that they were not going to pay the loss. At the insurance company's request Mrs. Ulteig had obtained four estimates on the house. The company failed to make payment and Mrs. Ulteig filed this action on April 14, 1960. On April 19, 1960, Ulteig made a confession that he had set the fire in a suicide attempt. On June 8, 1960, the Harris County grand jury returned an indictment against him and one count was for willfully burning a house within the city of Houston, and one count for willfully setting fire to insured property with intent to defraud. Testimony was tendered to the effect that Ulteig remained in jail from July to October 1960 without a drink; that the case was set and reset four or five times; that on October 7, 1960, a Mr. Powell from the company

handling the adjusting of this claim called the District Attorney's Office and said: "A plea of guilty would knock the lawsuit out. They'd be out $4,000.00 but would be satisfied with $2,000.00 restitution". On October 11, 1960, the Probation Department completed their pre-sentence investigation and recommended that Ulteig would not be a good risk for probation, although he had not been previously convicted of a felony. During this period of time Ulteig was not interested in probation and wanted a jury trial. On October 28, 1960, Ulteig, having been in jail since July of that year, appeared in Court, pleaded guilty to arson by willfully burning a house and received a five year sentence. He had been promised that the District Attorney's Office would recommend probation. That same day Ulteig was free for the first time in four and one-half months. The above statement of evidence is gleaned substantially from appellee's brief. Appellant, in its reply brief, says in effect that appellee's review of the evidence is substantially correct; that a careful study reveals a fairly accurate description both before and after the fire, but contends the evidence shows nothing, except hearsay, as to the cause of the fire, and does not controvert Ulteig's confession and plea of guilty in which he states that he intentionally and willfully set fire with the intention of taking his life; that appellee's argument that because Ulteig was a heavy drinker and that after four and one-half months without alcohol, that he would confess so that he could get a drink, is without any foundation because Ulteig signed his confession on April 19, 1960, sometime before he was indicted and placed in jail; that there is no evidence to vary or contradict the statements made by Ulteig in his confession or the statements made by him before the court upon his plea of guilty, unless it can be said that the hearsay statements attributed to him some few hours after the fire made to his wife while drunk, constituted evidence of probative value and that such statements should not have been admitted as part of the res gestae. In appellant's reply brief we find the following statement:

"It is true that the time period intervening in this particular case between the event and the statement is not so great as to militate against its spontaneity. Likewise, the fact that it may be self-serving does not in every case make the statement inadmissible. However, the fact that they were made away from the scene of the event by a person whose mental faculties had been dimmed by alcohol certainly gives reasonable grounds to suspect their spontaneity and reliability." Citing McCormick and Ray, Texas Law of Evidence, Volume 1, Sec. 917, page 691.

In the Simmons case heretofore cited, our Supreme Court said:

"The test for determining if there is evidence of probative value to support a jury verdict is whether reasonable minds might differ with respect thereto."

So, the question here is: Is there evidence of probative value to support the jury verdict to the effect that Ulteig did not cause the destruction of the house by intentionally and willfully setting fire to the house on February 5, 1960? We think there is. Needless to say that this question has given us some concern, and we have read carefully the entire statement of facts in order to arrive at our conclusion in this matter. We have previously detailed some of the pertinent parts of the testimony. In addition thereto the witness, Connor, a neighbor (across the street) testified to the effect that the fire started in the den and that he saw nothing to indicate that the fire was intentionally set; that he did not smell any kerosene, gasoline, or anything inflammable immediately after he went to the scene after being awakened by Ulteig. Mr. Johnson, the local agent for the insurance company, inspected the premises a day or so later in the company of Ulteig, and Mr. Johnson said he found no evidence

of arson, and that Ulteig told him: "that the first thing he remembered was that the house was full of smoke; and that he had to jump out the front window." On February 8, 1960, three days after the fire, Johnson sent forward the notice of proof of loss, listing the cause of the fire as unknown. No doubt the foregoing testimony had tremendous effect on the majority of the jurors. Moreover, the fact that Mrs. Ulteig did not give consent for her husband to see the son and the fact that she did not file this suit until April 14, 1960, and that Ulteig did not sign his confession until April 19, 1960, just five days after she filed her suit to recover this loss, and that Ulteig's history of drinking, and the way he had been acting prior to the fire, no doubt had great bearing on ten of the jurors. The witness, Mrs. Slavin, also testified to the fact that she saw Ulteig driving off about 10:30 that evening, and when she awoke at 12:30 and called Mrs. Ulteig, she could hear Ulteig at Mrs. Ulteig's door. The fact that the jury could not agree, is some proof that reasonable minds might differ with respect to the fact as to whether Ulteig did or did not willfully set fire to the house. Since we are of the view that there is evidence in this record of probative value to support the jury verdict, it follows that we are of the view that the court did not err in overruling appellant's motion for an instructed verdict, nor its motion for judgment non obstante veredicto, and each of the points from 1 to 6 inclusive are overruled.

But appellant says in points 7 and 8 that the Court erred in admitting the testimony from the witness, Mrs. Warren, concerning hearsay statements by Ulteig to Mrs. Ulteig relative to the cause of the fire, as well as admitting testimony from Mrs. Ulteig as to statements made to her by her husband following the fire, and as we understand appellant's contention, it is to the effect that the statements complained of are not admissible as being part of the res gestae, and that they are purely hearsay, and do not come within any of the exceptions to the hearsay rule. We overrule each of these contentions. With reference to the rule as to res gestae, our Supreme Court in City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, made this statement of the Rule:

" * * * that res gestae evidence is not the witness speaking but the transaction voicing itself. (citing cases). In determining whether evidence is admissible, each case must be tested by its own facts; and if upon a fair analysis a statement after the event does not appear to be a continuation of such event, it cannot be res gestae, even though made near the time of the occurrence. Statements must be either a part of the transaction or made under such circumstances as to raise a reasonable presumption that they are spontaneous utterances of facts arising out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design. If they are not in their nature a part of the occurrence, they do not constitute a part of the res gestae, and are inadmissible." See points 6 to 8.

Our Supreme Court has not changed or modified the foregoing rule. We believe the application of the foregoing rule to the factual situation here brings the admission of Ulteig on the night of the fire within the res gestae rule. Under the record, Ulteig was in a state of intoxication, was dressed in his underwear, and his statements to the effect that he was awakened by the smoke in the house and that he had to jump out the window and go to his neighbor, were made under such circumstances as to raise a reasonable presumption that they were spontaneous utterances of facts arising out of a transaction relating to the fire, and we are of the view that the actions and statements of Ulteig as disclosed by his dress and exclamations he made were made so soon after he was awakened by smoke in the

house as to exclude the presumption that his statements were the result of premeditation or design. Ten of the twelve jurors trying the case took this view. See Prater v. Traders & Gen. Ins. Co., Tex.Civ.App., 83 S.W.2d 1038, n. w. h., but cited with approval by our Supreme Court in Great American Indem. Co. v. Elledge, 159 Tex. 288, 320 S.W.2d 328, is in accord with this view, point 1. Moreover, we believe that the testimony complained of is admissible independently of the res gestae rule, for the reason that it is the best evidence available and proved exactly what happened at the time, or just prior to the time that Ulteig ran out of the house. We think the jury had a right and had the duty to take into consideration all the facts and surrounding circumstances disclosed by the suddenness with which Ulteig left the house, and the fact that he was in his underwear, and the fact that there was evidence that the fire started in the den, and there was nothing to indicate that he had willfully placed kerosene or any other inflammable material in the house for the purpose of burning it. We think under the record as a whole the statements of Ulteig that he did not set the house on fire appears to have been made in a natural manner without circumstances of suspicion. That leads us to say that the testimony tendered is sufficient to present a fact issue under all the facts and circumstances as to whether Ulteig did or did not intentionally set the house on fire. In the Prater case, supra, Justice Alexander cites from Commonwealth v. Trefethen, 157 Mass. 180, 31 N.E. 961, 24 L.R.A. 235, the following:

"The fundamental proposition is that an intention in the mind of a person can only be shown by some external manifestation, which must be some look or appearance of the face or body, or some act or speech; and that proof of either or all of these, for the sole purpose of showing the existing state of mind or intention [of the person is proof of a fact from which the state of mind or intention], may be inferred. * * *"

We think under the cases here cited the testimony complained of was admissible.

Appellant's point 11 is to the effect that the Court erred in failing to grant it a new trial, for the reason that the jury's negative answer to issue 1 was against the overwhelming weight and preponderance of the evidence so as to result in manifest injustice to appellant. We have carefully considered all the evidence and the record as a whole, and we are of the view that since appellant assumed the burden of proving that Ulteig intentionally and fraudulently set the house on fire, that we cannot honestly say that the verdict of the jury is so against the great weight and preponderance of all the evidence as to be clearly wrong and unjust, and this point is overruled. We have considered each of the other points and each is overruled. Appellee's cross-points have been considered and each is overruled.

The judgment of the trial court is affirmed.