THE SHIELD COMPANY, INCORPORATED, V. ROY A. CARTWRIGHT ET AL.

No. 8183. Decided February 9, 1944.
Rehearing overruled March 8, 1944.
(177 S. W., 2d Series, 954.)

*Geo. M. Hopkins,* of Denton, for the Cartwrights.

Where petitioners, Cartwrights, have been adjudged bankrupts and their estate is pending in the court of bankruptcy, suit on a claim that is subject to be released by bankruptcy court must be stayed for a period of twelve months and until the question of discharge has been acted upon. Putman v. Coleman, 277 S. W. 213; Higgingbotham-Bartlett Co. v. Powell, 270 S. W. 193; Adams v. Sheffield, 270 S. W. 1085.

Where seller has sued to rescind a contract and recover merchandise on account of fraud, and for the value of any merchandise sold by the seller, and it was proved that only $298.00 worth of the merchandise has been sold, it was fundamental error for

the court to render judgment against the buyer for the value of all the merchandise—$733.05. Savage Oil Co. v. Johnson, 141 S. W. 994; Dallas Ry. & Ter. Co v. Wells, 60 S. W. (2d) 485; Shelly Oil Co. v. Johnson, 151 S. W. (2d) 863.

*Richard Owens* and *Hampden Spiller*, both of Fort Worth, for the Shields Company.

It was error for the trial court to refuse to permit the judgment for the Shield Company of $733.05 against the bankrupt Cartwrights to be setoff against the judgment for the trustee in bankruptcy, Ben M. Gilbert, for said bankrupts against the Shield Company for $455.40. Patten v. Hill County, 297 S. W. 918; Moore v. Joseph, 40 S. W. ( 2d) 948; McNeese v Page, 29 S. W. (2d) 489.

*Melvin F. Adler*, of Fort Worth, for trustee in bankruptcy, Ben M. Gilbert.

The court should have allowed the trustee in bankruptcy the full retail vale of the goods, that being the highest market value, less the amount of the chattel mortgage debt. Commercial Credit Co. v. Schlegel-Storseth Motor Co., 23 S. W. (2d) 702; McCloud-Nash Motors v. Commercial Credit Trust, 187 Minn. 452, 246 N. W. 17.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

This suit originated in a sequestration proceeding in a state court by a wholesale concern against a retail customer. The customer subsequently filed a voluntary petition in bankruptcy and was adjudged a bankrupt. Thereupon a trustee—appointed by the bankrupt court intervened herein.

Shield Company was the wholesaler and sold to the retail concern (Roy A. and William M. Cartwright doing business under a trade name), several orders of merchandise, the first, on December 10, 1941. The merchandise consisted of radios and stoves (ranges) and subsequent orders therefor were filled in the same month and in January following. Early in February (Feb. 12, 1942) the company sequestered the merchandise remaining unsold, and a week later (Feb. 19) Cartwrights filed a voluntary petition in banqqruptcy in the District Court for the Northern District. They were adjudged bankrupts the same day, and sometime in March filed a plea in abatement in this cause. On May

25, 1942, they amended same in which they stated they had been adjudged bankrupts; that Ben M. Gilbert at the time of such adjudication was appointed trustee; that the administration of their estate was pending in the bankruptcy court, and that such court alone had jurisdiction of the matters in controversy. On June 12th the Cartwrights, still insisting on their plea in abatement, filed their original answer, presently to be referred to.

Shield Company sequestered the unsold merchandise upon its statutory affidavit that it owned and had the right of possession of same, its view being reflected in its allegations that due to fraudulent representations on the part of the Cartwrights title to the goods did not pass to them.

The Cartwrights in their answer denied the company's allegations, and further alleged that at the times of purchasing the merchandise they believed they would be able to pay for same on the respective due dates of the orders; that upon finding they could not do so they, on February 11, 1942, wrote their creditors offering to make an assignment for their benefit; that on the next day the company caused its writ of sequestration to issue; and that thereupon they filed their voluntary petition in bankruptcy and were adjudged bankrupts as stated above. The also alleged that since their estate was being administered by the bankrupt court the state court was without jurisdiction to render any judgment against them in the sequestration suit. They denied specially that they fraudulently caused the company to sell to them and denied that they caused the sales to be made by false representations contained in reports of their financial condition to Bradstreet and Dunn. They concluded their answer by disclaiming any and all interest in the controversy in the suit.

On September 21st the company filed its amended petition alleging, among other things, that the stoves were sold by it upon a "floor plan," or "trust receipts" plan, substantially similar to that involved in C. I. T. Corporation v. Hayne, 135 S. W. (2d) 618, which entitled it to certain relief with respect to the sale of the stoves, later to be referred to. Its prayer in full for relief against the Cartwrights was "that its said contracts of sale be rescinded and that it have judgment for title and possession of the property * * *, or if same has been disposed of by defendants, for the reasonable value of such as has been disposed of, and for * * * general relief."

The pleadings of the trustee in bankruptcy are brief. After setting out that the Cartwrights had been adjudged bankrupts he alleged his appointment as trustee by the bankruptcy court and that he was intervening in this cause by virtue of an order entered by the referee in bankruptcy directing him so to do. He further alleged the issuance of the writ of sequestration whereby the merchandise was repossessed by Shield Company, the company's lack of authority to rescind the contracts of sale thereof, and his own right to recover of the company title and possession; or, in event of conversion by the company, to recover from it the highest market value thereof between the time of conversion and the time of trial.

The company filed no pleading subsequent to its first amended petition referred to above and made no allegation of any character of or concerning the trustee, and made no reply to the trustee's pleadings in intervention, and sought no relief against him.

The jury found, in effect, that the Cartwrights had not been guilty of fraud in procuring the credit upon the strength of which the merchandise was purchased by them, in that the company in filing the order therefor acted solely upon information obtained from sources other than the Cartwrights.

■ The trial court correctly overruled the Cartwright's plea in abatement questioning the court's jurisdiction to try the case. It overruled the respective requests of the Cartwrights and the trustee for instructed verdicts, respectively; and after return of the jury's findings overruled the motions of the Cartwrights and the trustee, respectively, for judgment notwithstanding the jury's verdict.

The court found upon consideration of the verdict that Shield Company converted, on the date of sequestration (Feb. 12, 1942) the radios of the defendants (Cartwrights) of the value of $455.40, and proceeded as a result of such finding to award the trustee judgment against Shield Company for that amount with interest from the date of the conversion.

The court then overruled the company's motion for judgment non obstante veredicto, and found that the Cartwrights had not paid the company the purchase price of the radios, which was found by the court to be $766.80 less a credit of $33.75; and upon this finding rendered judgment in favor of the company against the Cartwrights for $733.02, with interest from the date

of judgment (Oct. 29, 1942.) The court decreed further in this connection that this judgment should not be allowed as an offset against the trustee's judgment against the company for conversion.

The trial court then found upon the evidence that Shield Company was entitled to repossess the stoves contracted to the Cartwright under the C. I . T. trust agreement above referred to; that the company had repossessed and sold same, and was entitled to the proceeds thereof ($336.00), and awarded the company judgment for $336.00 against both the Cartwrights and intervener. In this connection the judgment further decreed "the sum of $336.00, realized from the sale of said ranges * * * to be the property of and to belong to the plaintiff (Shield Company)," and that the Cartwrights were entitled to credit of that amount on their contract whereby they purchased the stoves.

The Court of Civil Appeals affirmed the judgment. 172 S. W. (2d) 108.

■■ We are in agreement with the decisions of the Court of Civil Appeals upon the first two points presented by Shield Company, to the effect (a) that the trial court did not err in excluding from evidence a pleading filed by the trustee in the bankruptcy court objecting (at the instance of a creditor) to the discharge of the Cartwrights in bankruptcy (see opinion 172 S. W. (2d) 111, loc. cits. (1) and (2) ; and (b) that it did not appear upon the trial of the case, as a matter of law, that the sale of the merchandise by the company to the Cartwrights was induced by fraud. Loc. cit. (3-6) p. 111.

■ We granted Shield Company's application for writ of error on the point alleging that the Court of Civil Appeals erred in affirming the trial court's holding that Shield Company was not entitled to be allowed the amount of the purchase price of the radios as an offset against the trustee's judgment ($455.40) against it for conversion. We have concluded upon further consideration that the Court of Civil Appeals was not in error in its holding on this point.

The court pointed out in its opinion that section 68, subd. (a) of the bankruptcy Act, as amended June 22, 1938 (11 U. S. C. A. sec. 108) provides that "in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against

the other, and the balance only shall be allowed or paid." While it seems clear that the facts do not present the requisite basis of setoff (that of "mutual debts or credits") it is not necessary to determine this point, since we approve the court's holding that there is no basis in the company's pleadings for the setoff claim contended for.

The company sought no setoff in its pleadings. It completely ignored the trustee's intervention and made no reference in its pleadings, not even by way of alternative pleading, to relief against the trustee in the nature of a claim for setoff, or of any other character. The trustee intervened by order of the bankruptcy court and represented as such trustee the whole body of creditors. Consequently, in seeking to get possession of the merchandise or the proceeds thereof he did not merely step into the shoes of the Cartwrights. The Cartwrights, notwithstanding they pleaded they had been adjudged bankrupts and that their estate "is now being administered by * * * one of the referees in bankruptcy" and that "all of the property in controversy * * * and all claims of every character" owned by them "passed to and became vested in" the trustee, and that they had "no interest in the controversy in this suit" and that they had therefore disclaimed "and here now disclaim any and all interest therein," continued as parties to the suit. The trustee's position in the suit under the facts was fixed by law as, among other things, the representative of the creditors. His purpose, as set forth in his pleading, was to recover from Shield Company for the estate of the Cartwrights which was being administered in bankruptcy, the title and possession of the sequestered merchandise. Notwithstanding the trustee pleaded such purpose and based it upon the ground of Shield Company's conversion thereof, and prayed accordingly, the company took no notice by way of pleading of his presence in the suit. It made no agreement with the trustee, or stipulation of any character that might have supplied its lack of pleading for the setoff it now contends the trial court should have awarded. See rule 67.

The Court of Civil Appeals was correct in holding that under the record no setoff could be allowed in the absence of a pleading therefor. Rule 47 cited by the Court of Civil Appeals as appearing to require that the claim be pleaded, reads:

"A pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third party claim, shall contain

(a) a short statement of the cause of action sufficient to give fair notice of the claim involved, and

(b) a demand for judgment for the relief to which the party deems himself entitled.

Relief in the alternative or of several different types may be demanded."

The provisions of the rule are so clear as to require no exposition to make it appear that it is applicable to the present facts. The company did not even plead a "short statement" as a basis for either a "counter claim," or a "cross-claim" or setoff. There was no "statment * * * sufficient to give fair notice of" either character of claim. Nor was any "relief in the alternative" of any of the "different types" of claims specified in the rule, "demanded." There was no stipulation of the parties relating thereto, nor was there any consent of the parties, express or implied that any issue of setoff should be tried. Hence there was no basis upon which any theory of setoff could have been tried. Rule 67 which provides among other things that "when issues not raised by the pleadings are tried by express or implied consent of the parties" they shall be treated in all respects as if raised, is not applicable because of the absence of such required "consent."

The company has no basis for recovery of the offset sought against the trustee under its contention that its prayer for "general relief" in its prayer for judgment against the Cartwrights was sufficient. The prayer is set out in full above, which see. It is unnecessary to determine whether it should be held sufficient as a basis for a setoff demand *against the Cartwrights*. We hold it *is not a demand by the company of any character against the trustee,* and overrule this contention.

The Court of Civil Appeals did not err in affirming the trial court's action in not allowing the setoff.

We are in accord in the light of final examination of the points contained in the applications for writ of error by the trustee and the Cartwrights, respectively, with the opinion of the Court of Civil Appeals. We are in accord also with its statement that what had been said in the opinion with respect to the points of error relating to the trustee, disposed in effect, of all points presented by him. 172 S. W. (2d) pp. 112-113, loc. cits. (8) and (9).

We agree also with the Court in its disposition of the points of error urged by the Cartwrights with respect to a) the judg-

332

ment rendered against them in favor of the company and b) the matter of staying execution. 172 S. W. (2d) p. 113, loc. cits. (9) and (10-11.) We affirm the holding of the Court of Civil Appeals upon the question of stay of execution without prejudice to the right of the Cartwrights to apply for and be heard upon an application for such stay of execution.

The judgments of the trial court and Court of Civil Appeals should be affirmed without prejudice to such right and it is so ordered.

Opinion adopted by the Supreme Court February 9, 1944. Rehearing overruled March 8, 1944.