James W. MOSS, Petitioner,

v.

George D. HIPP, Respondent.

No. A–10312.

Supreme Court of Texas.

. Feb. 17, 1965.

Rehearing Denied March 24, 1965.

Neal, Hazlewood & Wolfram, Amarillo, for petitioner.

Clayton, Kolander, Moser & Templeton, Amarillo, for respondent.

WALKER, Justice.

The rights of the parties to this appeal turn upon the existence and relative priority of the liens they assert against a 1957 Mack truck tractor owned by one A. D. Falls. Their claims, which fall into three categories, arose in the following manner:

(1) In July and October, 1960, Falls borrowed a total of $3,500.00 from or through George D. Hipp, respondent, and used the same for a down payment on the tractor and a trailer. Respondent was president of Star Grain Company, Inc., and the advances were made with checks drawn by him on the company's bank account. No note, chattel mortgage or other lien instrument was executed by Falls at the time to evidence or secure this indebtedness, hereinafter referred to as the original loan, but respondent contends that it later became secured by the chattel mortgage mentioned below.

(2) Falls borrowed the remainder of the purchase price of the tractor from the American National Bank, and on August 22, 1961, executed to the bank his note for $5,471.28 secured by a chattel mortgage on the tractor. The chattel mortgage contained a so-called dragnet clause providing, in effect, that it would also secure any other indebtedness then or thereafter owing to the holder of the note. A certificate of title was duly issued on the tractor showing as liens the note for $5,471.28 to the bank "and all future advances." Payment of the note was guaranteed by respondent in writing. Falls was unable to meet certain monthly installments on the note, and the same were paid by respondent. Finally on December 9, 1962, respondent paid the entire balance of the note to the bank and took an assignment of the note and chattel mortgage. The amount owing by Falls to respondent on the note, including principal, interest and attorneys fees, is referred to herein as the note balance.

(3) James W. Moss, petitioner, who is engaged in the garage business, repaired the tractor on several occasions during the period from October 10, 1961, to August 22, 1962. He was not paid for these services, and the balance unpaid on his claim for parts furnished and labor done, hereinafter referred to as the repair bill, is $1,799.37.

Petitioner instituted suit against Falls to recover the repair bill and for foreclosure of his constitutional repairman's lien on the tractor. See Texas Constitution, Article XVI, Section 37. Respondent intervened and alleged that the original loan and the note balance are secured by the chattel mortgage, and that the lien thereof is prior and superior to petitioner's claim. He prayed for a recovery against Falls on both debts, for foreclosure of the chattel mortgage lien, and for judgment declaring that any right or interest owned by petitioner in the vehicle is subordinate and inferior to such lien.

Petitioner sought and was granted an interlocutory default judgment against Falls, who failed to answer although he did testify as a witness at the trial. The controversy between petitioner and respondent was then tried before the court, and final judgment was entered decreeing: (1) that petitioner and respondent recover the amounts of their respective claims from Falls; (2) that the note balance owing to to respondent is secured by the chattel mortgage; (3) that the original loan owing to respondent is unsecured; (4) that the repair bill owing to petitioner is secured by a constitutional repairman's lien; (5) that the chattel mortgage lien securing the note balance is superior to petitioner's constitutional lien; and (6) that the liens be foreclosed and the proceeds of the foreclosure sale distributed as set out in the judgment. The Court of Civil Appeals concluded that both the original loan and the note balance are secured by the chattel mortgage, and that petitioner's lien is subordinate thereto. It modified the judgment of the trial court to provide that respondent's entire claim

is secured by a first and superior lien on the tractor. Tex.Civ.App., 380 S.W.2d 168.

■ There is a practice question which should be considered at the outset. Petitioner did not file an answer to respondent's plea in intervention, and respondent contends that there are no pleadings to support the trial court's judgment decreeing that the repairman's lien claimed by petitioner is superior to the lien asserted by respondent. He relies on Shield Co. v. Cartwright, 142 Tex. 324, 177 S.W.2d 954, where the plaintiff was denied an offset against the judgment awarded an intervening trustee in bankruptcy because the issue was not raised by the pleadings or tried by consent. The present record discloses a somewhat different situation. Petitioner has asserted no cause of action against respondent personally, and does not rely upon any affirmative defense to the latter's claim against the tractor. It is clear, moreover, that the parties knew, or were charged with knowledge, that the priority of their respective claims was in issue. The interlocutory default judgment against Falls expressly stated that the relative rights and priorities of petitioner and respondent would be determined by a subsequent and final judgment. In these circumstances petitioner's failure to answer the plea in intervention is not fatal to the trial court's judgment.

■■ Turning now to the merits of the case, petitioner recognizes that the lien of the note balance is superior to his constitutional lien. The only dispute here is with reference to the original loan. Respondent contends that the original loan became secured by the chattel mortgage when he acquired the note described therein, and in support of this contention he relies on:

(1) the dragnet clause of the chattel mortgage, and (2) an oral agreement which he alleged was made with Falls at the time the balance of the note was paid to the bank. He says that since he became the owner of the note secured by the chattel mortgage, the trial court erred in failing to give effect to the stipulation in the mortgage that it would also secure any other indebtedness then or thereafter owing to the holder of such note. We do not agree. Provisions of this type apply only to indebtedness which was reasonably within the contemplation of the parties to the mortgage at the time it was made. See National Finance Co. v. Fregia, Tex.Civ.App., 78 S.W.2d 1081 (writ dis.); Republic Nat. Bank of Dallas v. Zesmer, Tex.Civ.App., 187 S.W.2d 227 (no writ); 15 Am.Jur.2d Chattel Mortgages § 80; 14 C.J.S. Chattel Mortgages § 110. The trial court found as a fact that it was not within the contemplation of the parties to the note and chattel mortgage that the original loan would be secured by the mortgage, and the record does not show as a matter of law that the mortgage was intended to secure indebtedness of that nature. In view of the trial court's finding, therefore, we hold that the mere acquisition by respondent of the note secured by the chattel mortgage did not give him a lien on the tractor to secure the original loan.

Respondent also says that in consideration of his paying the note to the bank, Falls orally agreed that the original loan would be secured by the chattel mortgage. The trial court found that the alleged agreement was not made, but the Court of Civil Appeals held that it was established by the evidence as a matter of law. The only evidence tending to show such an agreement is the testimony of Falls, the relevant portions of which are quoted in the margin.[1]

1. Examination by counsel for respondent:
"Q. About when did you buy this truck? A. In July of 1960.

"Q. How did you acquire the money with which you purchased the truck? A. A loan, Mr. Hipp let me have the money.

"Q. How much did he let you have? A. $3,500."

\* \* \* \* \*

"Q. How much did you have to pay for this truck? A. Paid $16,500.

Respondent, the other party to the alleged agreement, did not testify. In considering the testimony given by Falls, it must be remembered that respondent claims no security for his original loan other than by virtue of the chattel mortgage. It should also be noted that Falls is a party to the suit, and that he and respondent apparently are on friendly terms. Falls did hauling for respondent's company, and respondent took no steps to enforce the lien he now claims until the present suit was instituted by petitioner. After petitioner caused the tractor to be sequestered, respondent replevied and turned the same over to Falls, who continued using it pending the trial. It also appears that the tractor is worth less than the total amount owing by Falls to respondent. If respondent can establish that both of his debts are secured by liens which are superior to the repair bill, petitioner will realize nothing on his claim unless Falls is subject to execution.

 We recognize that a fact may be established as a matter of law by the testimony of an interested witness provided his testimony is not contradicted by another witness or by attendant circumstances, is clear, direct and positive, and is free from contradiction, inaccuracies and circumstances tending to cast suspicion upon it. See Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904. It is our opinion, however, that the testimony of Falls concerning the alleged oral agreement does not meet all of these conditions. When the witness was first asked about an agreement between him and respondent regarding the mortgage held by the bank, he testified that respondent "was a signer on the note, and this other stood, it was all in on the deal." This rather obscure reply evidently refers to his understanding with respondent at the time the mortgage was given to the bank. In response to the next inquiry with respect to an agreement concerning the chattel mortgage, he stated "we agreed for him to pay it off, just like before, the tractor stood good for all I owed him." When the facts sought to be elicited were not recited in the question, he gave no answers which clearly and positively point to an agreement, made in consideration of respondent's acquiring the note, that the original loan would be secured by the chattel mortgage. He did not even purport to say that there was such an agreement except by his affirmative replies to leading

"Q. How did you pay the balance of it? A. By the month.

"Q. Well, I mean how did you acquire the money to pay the balance for the truck? If you got $3,500 from Mr. Hipp, how did you pay the balance? A. Financed it at the bank.

"Q. Which bank? A. The American National.

"Q. And was there any agreement between you and Mr. Hipp regarding the mortgage that the bank had? A. Well, he was a signer on the note, and this other stood, it was all in on the deal."

\* \* \* \* \*

"Q. Now, what arrangements did you and Mr. Hipp make regarding paying that note? A. He made an arrangement for him to pay it off.

"Q. Did you have any agreement regarding what he would have as security? A. Yes, the tractor—"

[Objection interposed and overruled.]

"Q. At the time they went down, what agreement did you have with Mr. Hipp

regarding what this chattel mortgage would secure? A. Well, when we agreed for him to pay it off, just like before, the tractor stood good for all I owed him."

\* \* \* \* \*

"Q. And, in accordance with the agreement which you made with him, this chattel mortgage on the truck was to secure that total amount that you say that you owe him right now. A. That's right.

"Q. And, as far as you are concerned and he is concerned, in the agreement, he has got the chattel mortgage securing Mr. Hipp's payment of the five thousand and some-odd dollars that you say you owe him right now? A. That is right."

\* \* \* \* \*

"Q. And, under your agreement with Mr. Hipp, he is to have this chattel mortgage the bank had as security? A. That's right."

questions propounded by counsel for respondent. Although these answers were not contradicted by another witness, the testimony of Falls when considered as a whole is somewhat less than clear, direct and positive, and in our opinion the trial court was not required to accept the same as a matter of law.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

POPE, J., not sitting.