In re Charles W. STRICKEL and Linda Strickel, Debtors.

Thomas J. GRIFFITH, Trustee, Plaintiff,

v.

TEXAS FARM BUREAU MUTUAL IN-SURANCE COMPANY, Defendant.

Bankruptcy No. 580–00087.
Adv. No. 581–0003.

United States Bankruptcy Court,
N. D. Texas,
Lubbock Division.

March 11, 1982.

See also, Bkrtcy., 19 B.R. 738.

Larry McEachern, Plainview, Tex., for debtors.

Walter J. Taylor, Joe H. Nagy, Lubbock, Tex., for Texas Farm Bureau Mutual Ins.

Thomas J. Griffith, Lubbock, Tex., trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Thomas J. Griffith, Trustee for the estate of Charles W. Strickel and Linda Strickel, debtors, filed a complaint against Texas Farm Bureau Mutual Insurance Company by which he seeks to recover damages and attorney's fees under two fire insurance policies. Nonjury trial was conducted on October 30, 1981. The following summary constitutes the findings of fact required by Rule 752.

Charles W. Strickel, in connection with the acquisition of a business in Plainview, Texas, which he conducted under the common name and style of "The House of Carpets," insured the contents of his business for $50,000.00 and insured a Yale 4000 Forklift for an additional sum of $6,500.00. The policies of insurance were issued on June 26, 1980, by Texas Farm Bureau Mutual Insurance Company on Texas Standard forms with loss-payee clause in favor of First National Bank of Plainview, a lienholder against the insured properties. The contents of the store were destroyed, and the Yale Forklift was damaged, by a fire which was discovered at approximately 1:00 o'clock A.M. in the early morning hours on August 20, 1980.

On August 19, 1980, the day preceding the fire, a carpet installer who was operating out of the debtor's business spilled some pad cement on the floor of the building and on some tack strips which were stacked against a wall of the building. Strickel was unsuccessful in his efforts to scrape the cement from the tack strips. During his lunch hour he went to his home and brought back to the store a one gallon can of gasoline which he had used to operate his lawnmower at the home. He used the gasoline in an unsuccessful attempt to dissolve the pad cement or to loosen it from the tack strips. At closing time he left the one gallon can of gasoline in the storeroom and left the air conditioner running in an effort to exhaust the fumes from the gasoline and from the cement from the store. At approximately 1:30 A.M. on the following morning he was awakened by the police who advised him that his store was on fire.

The parties agree that the policies of insurance were in effect, that all premiums had been paid, and that proper notice of loss was given. The major thrust of the defense advanced by the insurance company is twofold—the insurance company pleaded a limitation on liability in each of the policies and, in addition, contends that the fire was intentionally set. In the alternative the insurance company challenges the amount of damages and entitlement to attorney's fees claimed by the trustee.

Each of the subject fire insurance policies contained a limitation on liability which stated:

"Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring:

(a) while the hazard is increased by any means within the knowledge and control of the insured, providing such increase in hazard is not usual and incidental to the occupancy as herein described."

The insurance company contends that the hazard was increased by means within the knowledge and control of Strickel, its insured, when he brought the gallon of gasoline on the premises and when he poured it on the tack strips. The insurance company contends further that the use of gasoline in that manner is not usual and incidental to the occupancy of the premises for the purpose of conducting a carpet sales and installation business.

A threshold issue is concerned with the burden of proof.

Rule 94, T.R.C.P. reads in pertinent part, as follows:

".... Where the suit is on an insurance contract which insures against general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the con-

tract, nor shall the insurer be allowed to raise such issue *unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists.*" (emphasis added)

Prior to the adoption of Rule 94 a plaintiff suing upon an insurance contract was required to allege and prove that the facts the plaintiff relied on for recovery did not come within any of the contract exceptions exempting the issuing company from liability. Rule 94 changed the burden of pleading. There are presently no such burdens of allegation and proof on the part of the plaintiff, except where the insurer alleges that the loss was due to a risk or cause coming within a particular exception to the general liability. *Shaver v. National Title and Abstract Company*, 361 S.W.2d 867 (Tex.1962). Therefore, while the rule was changed as to the burden of pleading, a plaintiff still has the burden of proving that his case does not come within the exceptions from liability in the insurance policy sued on when the insurer alleges the loss was due to a risk within such exceptions. *Commercial Travelers Life and Accident Company v. Bruce*, 405 S.W.2d 634 (Tex.Civ. App.—Corpus Christi, 1966) writ ref. n.r.e.; *Sublett v. American National Insurance Company*, 230 S.W.2d 601 (Tex.Civ.App.— Eastland 1950) writ ref. n.r.e.

However, the real issue in this case is whether the limitation on liability in the subject policies is an exception or exclusion (upon which the insured has the burden of proof when it is raised by the insurance company) or whether it is a condition subsequent (upon which the insurance company retains the burden).

In *Knoff v. United States Fidelity and Guaranty Company*, 447 S.W.2d 497 (Tex. Civ.App.—Houston 1969), no writ, the heirs of an insured brought suit under a fire policy issued on the insured's residence. The fire insurance policy contained the following clause:

"Unless otherwise provided in writing added hereto, the company shall not be liable for loss occurring:

(a) while the hazard is increased by any means with in the knowledge and control of the insured, provided such increase in hazard is not usual and incidental to the occupancy as hereon described . . . ."

The Court concluded that the subject provision was not an exclusion, but rather was a condition subsequent which would avoid liability on the part of the insurance company. Therefore it placed the burden on the insurer to plead and prove the occurrence of the condition.

Similarly, in *Dixie Fire Insurance Company v. Henson*, 277 S.W. 756 (Tex.Civ.App.— Amarillo, 1925), aff'd 285 S.W. 265 (Tex. Com.App., 1926), it was stated that the burden rests on the insurer to plead and prove a breach of a condition and that such breach increased the hazard insured against.

In *R. B. Company, Inc. v. Aetna Insurance Company*, 5th Cir. 1962, 299 F.2d 753, the Fifth Circuit had occasion to deal with a fire insurance policy which contained the following provision:

"Conditions Suspending or Restricting Insurance. Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring . . . .

(a) while the hazard is increased by any means within the knowledge and control of the insured, provided such increase in hazard is not usual and incidental to the occupancy as hereon described . . . ."

The insurance company sought to show an increase in hazard by showing that the activities for which the building was used far exceeded the hazards contemplated by the insurer, as evidenced by the "building use" description on the face of the policy. The evidence regarding the increase in hazard was established by expert testimony and by evidence of the high rates commanded by the Insurance Commission manual for coverage of the uses which the insureds were making of the buildings covered by the policy. In this regard the court, citing *Dixie Fire Insurance Company v. Henson*,

supra, noted: "The insurer, in asserting these defenses did not shirk from the burden imposed by Texas law of sustaining them."

The clause that is the subject of controversy in the instant case is substantially similar to the clauses in the Fifth Circuit case, *R. B. Company v. Aetna Insurance Company*, and the *Knoff* case discussed above. Accordingly, the burden is on the insurance company to prove the condition subsequent—that the hazard insured against was within the knowledge and control of the insured, and that the increase in hazard was not usual and incidental to the occupancy which was described on the face of the policies.

The insurance company in this case has established that the gasoline which was brought on the premises was within the knowledge and control of the insured. The evidence is undisputed that Strickel brought the gasoline on the premises. Although there were flammables on the premises at the time the policies of insurance originally issued, and at all relevant times thereafter, the bringing of gasoline on the premises and using it in the manner in which it was used in this case does increase the hazard. However, the testimony from the insured's expert witness that the use of gasoline and similar solvents are customarily used in the industry to clean spills was substantially unchallenged. The case of *Hartford Fire Insurance Company v. Dorroh*, 63 Tex.Civ.App. 560, 133 S.W. 465 (1911) states some rules of law which may be helpful in resolving the issue. In that case the policy contained a clause which stated: "This entire policy shall be null and void if the hazard be increased by any means within the control or knowledge of the insured." The insured had received an anonymous letter from which he arguably could have inferred the threat of arson, yet he did not report this fact to the insurance company. Ultimately a fire was deliberately set to the adjacent building which caused the insured's building to burn. The appellate court noted:

"It is also the established rule that whether there has been an increase in the hazard or not must be determined by a comparison with the conditions existing at the time the policy was written. Until it is shown that a new danger has arisen that did not exist at the time the policy was written and delivered which augmented the general risk, there is no basis for the claim of forfeiture by reason of an increased hazard... Here the insurer undertakes to indemnify the insured against the possibility of a loss by fire for an agreed consideration paid in advance. The hazard here referred to evidently means the possibility of a loss by fire created by the sum of all dangers resulting from the recognized exposures.... It is also well known that many fires are of incendiary origin, and that in the transaction of their business insurance companies must take into consideration the dangers arising from that source in estimating the extent of the hazard they assume in all ordinary risks. ... Hence it follows that a loss resulting from the incendiarism for which the insured cannot be held responsible is one of the dangers against which he secures protection by the general terms of the policy. It is one of the dangers which the company assumes when it makes the contract of insurance and not one which it may claim arises subsequently and adds to the original hazard."

■ The insurer has not met its burden to establish the condition subsequent—that is, that the use of the gasoline in the manner of this case was not usual and incidental to the occupancy of the premises as a carpet store.

■ Next the insurance company contends that the fire was a result of arson. However, arson is also an affirmative defense upon which the insurer bears the burden of proof. *Aetna Casualty and Surety Company v. Clark*, 427 S.W.2d 649 (Tex.Civ.App.—Dallas, 1968), no writ; *Payne v. Hartford Fire Insurance Company*, 409 S.W.2d 591 (Tex.Civ.App.—Beaumont, 1966), writ ref. n.r.e.; *State Farm Fire and Casualty Company v. Ulteig*, 367 S.W.2d

898 (Tex.Civ.App.—Waco, 1963) writ ref. n.r.e.

■ There was no proof whatsoever that, if the fire was intentionally set, the debtor Strickel had anything to do with it. No motive or opportunity on his part was reflected by the testimony. In fact, the evidence from the insurer's expert casts serious doubt on the fire being caused in any manner by the gallon of gasoline which the debtor had brought on the premises. The report of the expert employed by the insurance company, which was received into evidence with responses to interrogatories designated by plaintiff, reflected that "large quantities of flammable liquid accelerants (2 to 4 gallons) was splashed onto the rear walls running down the wall to the floor behind the tack strips." That testimony is persuasive that the fire was caused by other means than the mere one gallon of gasoline which Strickel had brought to the premises.

The insurance company has failed in its burden to exempt coverage in this case. The trustee for the debtor is entitled to recovery under the two fire policies. However, there is an issue as to the amount of recovery to which he is entitled.

■ The measure of damages for damage to or loss of personal property, if market value is capable of being established, is difference between market value immediately before the injury and its market value immediately after the injury. *Mobile Housing Inc. v. Moss*, 483 S.W.2d 56 (Tex.Civ. App.—Tyler, 1972), no writ. The evidence adduced that the value of the forklift immediately before the fire was $4,500.00 and that its salvage sold for $2,400.00. Thus the amount which the trustee is entitled to recover under the fire policy insuring the forklift is the sum of $2,100.00.

The salvage value of the carpet inventory and office furniture was $50.00. The value of the office furniture, fixtures, tools and supplies immediately prior to the fire was $8,682.00. An issue exists, however, concerning the standard to be employed in determining the "market value" of the carpet inventory immediately preceding the fire.

The cost of that inventory was $38,544.40. The trustee contends that he should recover as "market value" the additional sum of $13,865.19, representing the "mark up" on the inventory. The insurance company cites provisions in the subject policies, which limits liability to "the actual cash value of the property at the time of the loss, ascertained with proper deduction for depreciation; *and . . . (shall not) . . . exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss . . . .*" Thus, the insurer insists that its liability, if any, is limited to the replacement value of the carpet.

Texas cases which have treated the subject appear to set the relevant value at what the goods would have sold for in bulk or in convenient lots. *Shield Company, Inc. v. Cartwright*, 172 S.W.2d 108, 113 (Tex.Civ. App.—Fort Worth, 1943) aff'd. 142 Tex. 324, 177 S.W.2d 954 (1944); *Missouri, K. & T. Ry. Co. of Texas v. Cadenhead*, 164 S.W. 395 (Tex.Civ.App.—Texarkana, 1914) error dism'd. No testimony was adduced at the trial which reflected that value. However, those cases were cited, with many citations from other states, in *J&H Auto Trim Company Inc. v. Bellefonte Insurance Company*, D.C., M.D.Fla., 1980, 501 F.Supp. 942, 951 for the proposition that "when there is no market value for a stock in trade which has been lost or destroyed, according to the great weight of authority, the proper measure of damages is the wholesale cost of the stock in trade, plus freight, and not the retail selling price."

I find, therefore, that the trustee should recover from the insurance company under the fire insurance policy on the forklift the sum of $2,100.00.

■ I find, further, that the damages recoverable under the policy insuring the inventory of carpet and the furniture, fixtures, tools and supplies totals $47,226.40. The insurance company is entitled to setoff in the sum of $31,448.16 for payments to

First National Bank of Plainview as loss-payee on the policy and an additional setoff of $50.00 for salvage value. Thus, the recovery which the trustee shall make under the policy insuring the inventory and furniture, fixtures, tools and supplies is the sum of $15,728.24.

The trustee had been permitted to act as his own attorney. His claim of entitlement to attorney's fees for prosecuting the action against the insurance company under the two subject policies presents an interesting question.

Article 3.62 of the Insurance Code provides that when a policy loss occurs and a life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident insurance company fails to pay within thirty days after demand for payment, it is liable, in addition to the amount of the loss, for 12% thereof as damages, and also for a reasonable attorney's fee for the prosecution and collection of the loss. That statute was held to be highly penal, thus requiring strict construction. *McFarland v. Franklin Life Insurance Company*, 416 S.W.2d 378 (Tex. 1967).

For approximately fourteen years subsequent to its enactment, the statute was held not to apply to claims against fire insurance companies. *Standard Fire Insurance Company v. Fraiman*, 588 S.W.2d 681 (Tex.Civ. App.—Houston, [14th Dist.], 1979), writ ref. n.r.e.; *First Preferred Insurance Company v. Bell*, 587 S.W.2d 798 (Tex.Civ.App.— Amarillo, 1979) writ ref. n.r.e. Plaintiffs seeking to recover attorney's fees on fire insurance complaints sought other statutory support for the recovery.

In January, 1981, the Fifth Circuit, in *Reynolds v. Allstate Insurance Company*, 5th Cir. 1981, 633 F.2d 1208 addressed the issue:

"§ 7 of the Unfair Claim Settlement Practices Act seems to cover almost every type of insurer that can exist, in order to enable the Texas Board; of Insurers to guard against deceptive practices by any of these companies. We find it extremely difficult to believe that the Texas Legislature intended the exclusion provision to prevent the award of fees on all insurance contracts in all cases except those brought under the Unfair Claims Act of the Board of Insurers. Rather, it seems more sensible that the legislature excluded from the scope of coverage of Article 2226 suits brought under those acts—such as the Unfair Claim Settlement Practices Act—which themselves specify conditions for awarding attorney's fees. Thus, we deem it more logical that the exclusion provision of Article 2226, quoted above, was intended to increase, not decrease, the availability of fees to plaintiffs. Yet, for the time being, it seems that the "plainer" language of Article 2226 and the case of *Standard Fire Insurance Company v. Fraiman*, 588 S.W.2d 681 (Tex. Civ.App.—Houston 1979), require the conclusion that fire insurers, among many others, are excluded from even the "liberally construed" scope of Article 2226 and that attorney's fees should not have been awarded in the present case."

One month later, on February 27, 1981, the Court of Civil Appeals in Texarkana handed down the case of *Prudential Insurance Company of America v. Burke*, 614 S.W.2d 847 (Tex.Civ.App.—Texarkana, 1981). In that case the insured under a life insurance policy filed suit against the insurer because the insurer had refused to change the designated beneficiary in accordance with the insured's instructions and sought recovery of attorney's fees incurred as a result of institution of the lawsuit. The insurer had refused to make the change on the grounds that the named beneficiary had a vested interest in the policy. In discussing the propriety of awarding attorney's fees, the Court, in its main opinion, stated the following:

"The insurance policy involved here contains no provisions for the recovery of such fees. Tex.Rev.Civ.Stat.Ann. art.

2226, which provides for the recovery of such fees in many types of cases, expressly excludes claims against insurance companies which are subject to the provisions of Texas Insurance Code Annotated Arts. 21.21, 21.21–2 (Supp.1980) and 3.62. Article 21.21 of the Insurance Code applies to any person or corporation engaged in the business of insurance in Texas. *J. Freeman Company v. Glenn Falls Insurance Company*, N.D.Tex.1980, 486 F.Supp. 140; yet none of the Insurance Code provisions allowing a recovery of attorney's fees applies to this type of case. Neither does the Declaratory Judgment Act allow for the recovery of attorney's fees, unless they are recoverable by virtue of other statutory or contractual provisions (citations omitted). The judgment of the district court is reformed to delete the provisions awarding attorney's fees." *Id.* at 850.

On rehearing, the Texarkana court reversed itself on the issue of attorney's fees, concluding that Mr. Burke was in fact entitled to this recovery.

Note the following language:

"In our case Mr. Burke prayed for specific performance of Prudential's contractual obligation to change the beneficiary of his policy and the trial court in its judgment ordered Prudential to comply.... If a suit to specifically perform a contract to convey real estate authorized a recovery of attorney's fees under Article 2216 (referring to *Jones v. Kelley*, 614 S.W.2d 95 (Tex.1981), a Supreme Court case in which this was the holding), there appears to be no reason why such a recovery should not be allowed in this suit unless it be considered that the statute excludes all insurance contracts. Upon further consideration we have concluded that, in excluding contracts of insurance companies subject to the Insurance Code's Unfair Claims and Settlement Practices Act, the Unfair Competition and Unfair Practices Act, and § 3.62 of the Insurance Code, the purpose of Article 2226

was to exclude only those claims against insurance companies where attorney's fees were already available by virtue of other specific statutes, as they are in those which Article 2226 specifically mentions. In view of the Supreme Court's extension of Article 2226 to suits on written contracts involving other than monetary claims, and in view of the legislative mandates that Article 2226 is liberally construed, we hold attorney's fees were properly awarded." *Id.* at 850.

In a per curiam opinion delivered by the Texas Supreme Court on September 28, 1981, the decision of the Texas Court of Civil Appeals was affirmed. *Prudential Insurance Company of America v. Burke*, 621 S.W.2d 596 (Tex.1981).

Accordingly, Texas law appears to permit recovery of attorney's fees on fire insurance policies where, as here, recovery under Article 2226 is sought. The amount of reasonable attorney's fees to be so awarded to the trustee will be determined in accordance with the mandate of *Johnson v. Georgia Highway Express*, 5th Cir. 1974, 488 F.2d 714, and its progeny. Accordingly, the trustee shall file a chronological statement, setting out in detail not only the hours spent in prosecuting this action, but detailing how each of those hours was spent. The Johnson factors will be analyzed by the Court and an appropriate award will be made.

LET JUDGMENT BE ENTERED ACCORDINGLY.