Marvin DUDLEY, Appellant,

v.

Donald W. BORN, et ux., Appellees.

No. 09–84–382 CV.

Court of Appeals of Texas, Beaumont.

April 10, 1986.

Rehearing Denied May 5, 1986.

■■■■■■■■■■■■■■■■■■

Bruce M. Partain, Beaumont, for appellant.

Jon B. Burmeister, Moore, Landry, Garth & Jones, Beaumont, for appellees.

## OPINION

BROOKSHIRE, Justice.

Appeal from a suit for damages, alleging breach of a Construction Loan Agreement. The agreement was secured by a Promissory Note and Deed of Trust. The judgment below, after a bench trial, was awarded to Donald Born and wife, Celia Born, for damages, attorney's fees and costs. Findings of Fact and Conclusions of Law were filed. At the bench trial, the court held that Dudley had breached the Construction Loan Agreement by an anticipatory breach by suggesting to the Borns to seek other sources of the final funding; secondly, by charging the Borns more interest than was agreed to under the governing instruments; and, thirdly, by refusing to fund the balance of the last one or two "Requests for Advance" under the loan agreement.

Obviously, the paramount issue in the case sub judice, and especially under the Construction Loan Agreement, was which party breached the agreement. Dudley contended the Borns breached the loan agreement. At the threshold, it should be pointed out that the Construction Loan Agreement contained certain "terms and conditions". Both parties, during the negotiations leading to the loan agreement, were represented at all times by able, experienced attorneys. Both parties were represented and advised by their respective attorneys at the actual time of the signing of the documents. The documents were explained by the attorneys, in detail, to the parties. The final closing took place in the office of the attorneys for the Borns.

The construction was the building and completion of an airplane hangar, office building, and other improvements located at the Beaumont Municipal Airport. The Appellees had determined that they would need $175,000. to properly construct and complete all of the construction and improvements on the project. Therefore, the loan was so structured that Dudley would lend to the Borns a total of $175,000. This sum was to be advanced as the work progressed upon certain "Requests for Advance" as agreed to by the parties. The agreement called for a specific form of "Request for Advance" which provided for certain important recitations, certificates and representations of facts concerning completed work and owed bills.

Since the Construction Loan Agreement was definitely a contract of commitment to advance monies on certain "terms and conditions", the agreement had to be strictly complied with by the "Borrowers" in order to enforce their right of advances from the "Lender". *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex.1976); *Republic of Texas Sav. v. Island Recreational*, 680 S.W.2d 588 (Tex.App.—Beaumont 1984), *affirmed*, 28 Tex.Sup.Ct.J. 534 (July 3, 1985) (Motion for Rehearing pending).

The "Requests for Advance" were to include specific wording and were to list the sub-contractors, materialmen and other suppliers who had done work on the project. The "Requests" specified the degree of completion for each of these claimants' work. The "advances" were to be used to pay the bills listed. It was unequivocally set forth as a "condition" that the completion date for the total, one hundred percent completion, of all improvements was to have been July 10, 1981. The project was not completed by that date; nevertheless, Dudley did grant extensions of time to complete the improvements. The extensions of time did not change or reduce the force or efficaciousness of the other "terms and conditions" of the Construction Loan Agreement.

After the original deadline of July, 1981, on October 1, 1981, the attorney for Dudley wrote a letter to the Borns, with a copy to

their attorney of record, or vice versa, stating the final construction completion deadline to be November 1, 1981. This same letter specified a number of important major items of construction still to be completed by Appellees. On October 1, 1981, about 3 months after the original completion date, the construction was only about eighty-five or ninety percent completed.

Later on, there was an attempt to complete parts of the improvements, including work on the hangar, work on the office building, and a taxiway. Then on November 9 and November 13, 1981, there were two separate "Requests for Advances" made, both of these "Requests for Advances" were numbered "No. 9". The first "Request for Advance No. 9" was for $44,111.48, being the total amount of the balance of the unfunded monies. However, on November 13, the Borns resubmitted a second "Request for Advance No. 9" in the reduced amount of $26,021.79.

### THE COST OVERRUNS

It is glaringly clear in the record that there were large cost overruns. The amounts of these overruns, at different times, varied but they exceeded $12,000. Indeed, when the final disbursement on the construction project was made, on March 8, 1982, it was shown that a considerably larger sum than $12,000. was due, owing, and payable to various subcontractors, materialmen and other claimants who were in a position to assert lien claims against the improvements at the Municipal Airport. The larger, disbursed sum was $67,413.57.

Dudley's letter of October 1, 1981, required and demanded that the Borns deposit with Dudley such amounts of money as would be reasonably necessary for the payment of all of the outstanding bills and cost overruns. This demand undoubtedly was wise and reasonable; it was a "condition" of the loan agreement. At the final closing of this matter in March of 1982, the Neches Title Company showed outstanding mechanics' and materialmen's claims, in re the Borns' construction project at Municipal Airport, to be in the total sum of $67,-413.57, which the title company, in accordance with the Borrowers' (the Borns') statement, actually disbursed. These are listed as follows:

| | |
|---|---|
| ROGER SIMON | $ 7,207.50 |
| BOCKMAN CONSTRUCTION | 1,002.56 |
| RADCLIFF MATERIALS | 399.74 |
| ALLIED ELECTRIC | 17,053.00 |
| UNIVERSAL CEILING | 2,000.37 |
| HUBERS | 10,901.69 |
| K–G PLUMBING | 2,877.25 |
| C.L. SHERMAN | 3,885.98 |
| TYSON & KENNESON | 14,289.48 |
| LINDY DENNIS | 7,785.00 |
| Total | $ 67,413.57 [Sic] |
| CORRECT TOTAL | $ 67,402.57 |

The letter of November 13, 1981, is clear and unequivocal, stating:

"... Marvin Dudley will make several requirements relating to full payments of all bills for labor and materials." The requirement was a demand made by the Lender. A second time in the letter, a demand was made by the Lender. The letter, in a separate paragraph, read:

"Secondly, we will require that Mr. Born deposit with Mr. Dudley the additional funds necessary to pay for all labor and material in connection with the construction, whether invoiced or not. As you know, there were some *$35,000.00 worth of other bills* which were presented with the first request no. 9...." (Emphasis added)

We determine that the record conclusively shows that the $35,000.00 was a conservative figure in view of the $67,413.57 paid out at closing for mechanics' and materialmen's claims by the Neches Title Company. The $67,413.57 was on the Borns' settlement statement and agreed to by them.

The Construction Loan Agreement specifically provided for the right of Dudley to make this requirement. It was a "term and condition".

Paragraph 10 of the loan agreement reads, in relevant part:

"10. *Borrower's Representations and Warranties.*

"(a) Borrower shall pay to Lender, on demand, and whether or not any funds

are advanced hereunder, all fees and expenses incurred by Lender in connection with this Loan, including legal fees, survey costs, hazard insurance premiums, filing and recording fees, and other expenses incurred by Lender in consummation of the transaction contemplated hereby, together with all engineering and architectural fees and charges made by third parties with regard to the construction and inspection of the same as required by this Loan Agreement.

"(b) *Upon demand by Lender, Borrower will deposit with Lender such sums as Lender may reasonably deem necessary in addition to the Construction Loan for the completion and payment of all costs in connection with the construction of the Improvements* and for the performance of any obligations of Borrower to Lender under the Note and this Construction Loan Agreement. *Such demand of Lender may be made before or after an Event of Default shall have occurred hereunder.* (Emphasis added)

It is especially noteworthy that the agreement specifically provided any demand or requirement by the Lender could be made either before or after any event of default shall have occurred.

## THE CITY OF BEAUMONT LETTER

In the same letter of November 13, 1981, a demand was made by Dudley upon Born for an appropriate letter from the City of Beaumont stating that Born's lease was not in default; that all the improvements had been constructed satisfactorily in accordance with the plans and specifications approved by the City; and, especially, that all taxiway improvements, not on the leased premises, had been completed satisfactorily to the City.

These demands concerning the lease from the City of Beaumont and the City's several approvals were specifically set out in paragraph 5 of the Construction Loan Agreement reading:

"5. *Lease with the City of Beaumont.* Borrower shall also deliver to Lender, *as a condition to Lender's obligation to disburse,* an executed conterpart of the Fixed Base Operator Agreement and Ground Lease ("the Lease") executed by the City of Beaumont and Borrower and any and all amendments and supplements thereto. Lender shall also be furnished evidence reasonably satisfactory to Lender that all terms and conditions of the Lease have been met, or, in Lender's sole reasonable judgment, can with reasonable certainty be met by Borrower. Compliance with the foregoing requirement shall include, but not be limited to:

"(a) Written approval by the City of Beaumont of architectural and engineering plans and specifications for the entire project.

"(b) Written acknowledgment by the City of Beaumont of an executed copy of the deed of trust given as security for this loan.

"(c) A letter from the City of Beaumont agreeing that the Lease will not be revoked, rescinded, modified, or terminated without Lender's prior written consent, except as provided in the Lease, upon the occurrence of an event of default.

"(d) Written approval by the City of Beaumont of any taxiway improvements outside the leased premises." (Emphasis added)

Appellees did not comply with Paragraph 5; they breached it as a matter of law. *Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978); *Moss v. Hipp,* 387 S.W.2d 656 (Tex.1965); 1 RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL, Sec. 3 (Texas Practice 3rd Ed.1980).

Yet, Paragraph 5 paramountly provided compliance "as a condition to Lender's obligation to disburse." In regard to the bills and large cost overruns, Born swore to this unequivocal statement: "I did not have the funds available. I already stated that." Hence, he breached the contract in that material regard. He also admitted that no

letter from the City of Beaumont had been obtained. The record shows: [Question to Born]

"Q But you never provided a letter from the City of Beaumont?

"A No, I didn't."

The Plaintiffs, the Borns, simply did not furnish any such documentation. The Borns simply did not comply with Paragraph 5 which was a condition precedent. They were in default. They breached the contract and the basic loan agreement; hence, as a matter of law, Dudley was not under an obligation to disburse.

## PAYMENT OF EXPENSES AND FEES

The loan agreement also specifically provided for the payment by the Borrower to the Lender of certain fees and expenses incurred by the Lender in connection with the loan, including legal fees, filing and recording fees, and other expenses, together with certain engineering and architectural fees and charges made by third parties in regard to the construction and inspection of the improvements. Although detailed, proper demand was made, the legal fees to Dudley's attorneys were not paid; hence, another breach of a "condition" by Appellees.

The failure to pay the attorneys' fees was a breach of the "terms and conditions" of the loan agreement as set out in Paragraph 10 (a) above.

Both Appellees admitted that they were not ready and able to deposit the funds in accordance with the demands of the Lender to cover the large construction cost overruns amounting to approximately $67,000. represented by mechanics' and materialmen's claims.

## LINDY DENNIS' STATEMENT

Donald Born conceded that certain funds advanced by Dudley, which were specifically advanced for the payment of a certain subcontractor, were diverted. A check dated in July of 1981, made by Born, for $7,006.,[1] which was payable to Lindy Dennis Air Conditioning, was returned for insufficient funds. This check for air conditioning work was not paid until March 8, 1982, approximately 8 months after specific funds had been advanced by Dudley to Born to satisfy this specific Lindy Dennis claim for air conditioning.

## BORNS' IN-COURT ADMISSIONS

This record demonstrates that, prior to the bringing of their original petition for commencement of litigation, neither of the Borns made any protest concerning Dudley's requirements and demands that the basic Construction Loan Agreement be adhered to. Both of the Appellees admitted unequivocally that they could not make a deposit with Dudley to cover the construction costs and overruns. Dudley could not have been in breach of the agreement because of this failure on the part of the Borns to make the proper deposit.

Paragraphs 10 (a) and (b), above referred to, are also reinforced by Paragraph 10 (h) reading as follows:

"(h) No waiver of any default on the part of Borrower shall be construed as a waiver of any other or subsequent default No delay or omission in exercising and enforcing the rights and powers of Lender shall be construed as a waiver of such rights or powers hereunder by Lender. No such delay or omission shall be held to exhaust such rights and powers. Every such right

---

**1.** Born issued an insufficient funds check to pay Lindy Dennis and the check was dishonored; hence, that advance to pay Lindy Dennis was not properly used. The request for payment, which necessarily had to be complied with, provided for a statement or certificate to the effect that "[a]ll bills for material and labor (less applicable retainages) have been paid or will be fully paid out of the proceeds of this advance."

The certificate on the bottom of the "Request for Advance", No. 8, further states: "I recognize that under the provisions of Article 5472e of Vernons [sic] Texas Civil Statutes the construction funds advanced hereunder are Trust Funds for the benefit of suppliers and contractors. Misapplication of Trust Funds is a felony under Texas Law. Dated: July 29, 1981" and signed by Donald W. Born.

and power may be exercised from time to time.

Reinforcing Dudley's position, Paragraph 7 of the agreement provides in relevant part:

"7. *Events of Default.* Any one of the following occurrences is an Event of Default under the Note and this Construction Loan Agreement:

" . . . .

"(b) Failure of Borrower to observe or to perform any of his covenants or obligations under this Loan Agreement, the deed of trust, security agreement, or other instruments given by the Borrower as security for the payment of the Note.

"(c) Failure of Borrower to observe or to perform any obligations of Borrower as set out in this Construction Loan Agreement."

■ Pursuant to the above, we sustain those points of error of the Appellant contending the trial court erred in finding the Borns had complied with all the "terms and conditions" to qualify for the remaining monies to be advanced. We so hold as a matter of law. *Moss v. Hipp, supra; Collora v. Navarro, supra.* We decide, as a matter of law, that the Borns failed in several crucial aspects, as discussed above, to comply with the "terms and conditions" of the agreement. They breached the contract. They were in default. Dudley did not breach the contract. Dudley was not under an obligation to make the last funding.

As a necessary corollary, the trial court erred in finding that Dudley's refusal to fund the last "Requests for Advances Nos. 9" was a breach of the contract.

### ANTICIPATORY BREACH

■ Donald Born testified that at some time, either in August or September of 1981, that Dudley came to him [Born]. The construction was going slowly. Then he testified that Dudley had made a statement to Born that Born ought to start looking somewhere else to finance the project. Appellant denied the timing and the thrust of the conversation. Dudley's version was that he suggested financing the last improvements elsewhere under the surrounding facts and circumstances as they existed some time subsequent to November 1, 1981, especially since it appeared that Born was having difficulties with the completion of the work and the large cost overruns. Dudley said that this conversation took place definitely after he was fully aware that there were debts over and beyond the amount of the agreed loan.

Under the version of either side and especially the version or the testimony as given by Born and the subsequent actions of the parties, we find that there was no evidence to support the Findings of Fact Nos. 10 and 11, 13 and 14, and that, as a matter of law, in this regard, the Appellant did not anticipatorily breach the loan agreement.

Inasmuch as the trial judge in the bench trial made certain findings of fact, we will, of course, sustain these findings unless they are erroneous as a matter of law. Following *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler, 1966, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960), Garwood, *The Question of Insufficient Evidence on Appeal*, 30 TEXAS L.REV. 803 (1952); *Moss v. Hipp, supra* and *Collora v. Navarro, supra*, we hold as a matter of law that the conversation did not create a breach of the loan agreement by Dudley.

Dudley's suggestion to Born that he might pursue other avenues of financing, could not, as a matter of law, have been a breach of the basic loan agreement. The Borns did not act upon it. Later, the Borns made several requests for advances; two were made as late as November, 1981. Even under Born's version of the conversation, Dudley's statements were not of a nature so as to constitute an anticipatory repudiation of the agreement. Dudley's

letters of October and November conclusively demonstrate that no anticipatory breach transpired. To have constituted a breach or repudiation, the statements and actions of Dudley would have had to be absolute, positive, unretracted, unretractable, and unconditional. This record is to the contrary. *Kilgore v. Northwest Texas Baptist Educational Society*, 90 Tex. 139, 37 S.W. 598, 600 (1896); *McKenzie v. Farr*, 541 S.W.2d 879 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *Pitts v. Wetzel*, 498 S.W.2d 27 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.).

The trial court erred in its Conclusion of Law No. 1. The Borns cannot recover on the theory of anticipatory breach of contract as a matter of law under this record.

The precedents defining anticipatory breach of contract are well settled. Even the intention to abandon a contract on a future date is not a breach. Furthermore, the intention has to be positively declared and that intention *must be accepted by the other party as a complete and binding repudiation and termination of the contract*. Also, declarations concerning future matters must be unconditional and must be promptly acted upon by the other party. In *Kilgore v. Northwest Texas Baptist Educational Society*, 90 Tex. 139, 37 S.W. 598, 600 (1896), the Court wrote:

"The intention to abandon the contract at some future date is no breach of it; but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself, and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declarations, if he chooses to do so, and thus make effective the declarations of intention not to perform, rendering the contract thereby one that is broken on the part of the promisor himself. But, to have this effect, the declaration of an intention not to perform the contract in the future must be unconditional in its terms. Benj. Sales, sec. 568; ... In his work on Sales, Mr. Benjamin, in the section cited above, says: 'But a mere assertion that the party will be unable or will refuse to perform his contract is not sufficient. It must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made; for, if he afterwards continue to urge or demand compliance with the contract, it is plain that he does not understand it to be at an end.' This language was approved by the supreme court of the United States in the case of *U.S. v. Smoot*, supra [15 Wall. 36, 82 U.S. 36, 21 L.Ed. 107]."

See *Moore v. Jenkins*, 109 Tex. 461, 211 S.W. 975 (1919); *Pollack v. Pollack*, 39 S.W.2d 853 (Tex.Comm'n App.1931, holdings approved), reh. den., 46 S.W.2d 292 (Tex.Comm'n App.1932); *McKenzie v. Farr*, 541 S.W.2d 879 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.).

### THE INTEREST ISSUE

The last witness was Janice Hudson. She had a BBA from the University of Texas. She majored in real estate and finance. She has a position as assistant cashier and loan officer of a large bank. She deals routinely with promissory notes and especially real estate loans and real estate notes. She explained her calculations in summary. After careful calculations, that were not at all shaken or impuned by cross-examination, the total amount of interest that should have been paid was $24,686.28. There was actually paid on the note the sum of $24,783.69. These figures were exactly and expertly shown by detailed calculations in exhibits. Hence, we hold, as a matter of law, the sum of $97.41 of interest was collected over and above the correct amount.

We find, as a matter of law, there is no evidence to support the trial court's findings of fact that the amount of excess interest charged under the contract was $512.00.

## ATTORNEY'S FEES

The claim for an attorney's fee was based on a breach of the contract. We hold that the "Request for Advance" was not a presentment of a "valid claim", under *TEX.REV.CIV.STAT.ANN. art. 2226* (Vernon 1971). *It was merely a request for an advance.* It's wording, language, tenor and effect did not comply with *art. 2226.* It was simply not a "valid claim". It was not a valid claim for payment for a just amount owing.

In any event, even under the request for advance, there was no claim for excessive interest. The Construction Loan Agreement does not provide for any attorney's fees for the Borns.

The Borns concede that the real issue, on attorney's fees, is whether the Borns presented Dudley with a proper presentment of a correct, valid claim. We hold they did not do so as a matter of law. One of the basic, underlying purposes of *art. 2226* requires that a valid claim for the payment of a just amount owed had been presented to—in this case—the Lender. The primary purpose is to allow the person against whom the claim is alleged to have 30 days to investigate the claim and, if it is a valid claim, then to pay the same and thereby avoid unnecessary costs and attorney's fees. But to make the so-called claim a "valid claim" for a just amount owing, the claim must reasonably call to the attention of the other party the type of claim to be investigated and appraised. We find that no presentment of a valid claim for a just amount owing was made under *art. 2226* and the count for attorney's fees must fail.

Plaintiff's Original Petition cannot be considered as the presentment of a valid claim for a just amount. The original petition complains of excess interest. But, at the trial, a main thrust of the Borns' action was for breach of contract "by failing to fund the last installment of .approximately $45,000.00...."

*Article 2226* is a statute that is penal in nature. It must be strictly construed. *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893 (Tex.1962).

Furthermore, we have determined that the Borns proffered no evidence or testimony *of presentment* of a valid claim. Hence, they cannot recover on the attorney's fees count even though there was testimony as to a *reasonable amount.*

We have adhered to the established standards when applying the "matter of law" doctrine.

Necessarily, we reverse the judgment and render the proper one; that Donald W. Born and wife, Celia Born, have judgment in the sum of $97.41 from Dudley, but the Borns recover nothing more.

The costs of this appeal are taxed ½ to the Appellant and ½ to the Appellees.

REVERSED AND RENDERED.